FRED R. COOPER, Plaintiff-Appellee, *v.* ROCKFORD NEWSPAPERS, INC., *et al.*, Defendants-Appellants.

(No. 75-222; )

Second District (1st Division)—December 24, 1975.

Francis E. Hickey and Peter DeBruyne, both of Rockford, and Larry Simms, of Washington, D.C., for appellants.

Eugene Brassfield, of Maynard, Brassfield & Cowan, of Rockford, for appellee.

Mr. PRESIDING JUSTICE SEIDENFELD delivered the opinion of the court:

The defendants, Rockford Newspapers, Inc., a foreign corporation; Cove Hoover, its publisher and president; and L. C. Miller, its vice president, appeal from an order granting a temporary injunction. The appeal is interlocutory pursuant to Supreme Court Rule 307 (Ill. Rev. Stat. 1973, ch. 110A, par. 307). The order appealed from prohibits the newspaper, its president and publisher, and its vice president from "writing editorials or editorializing" about a libel suit filed by Cooper against the defendants. The defendants contend that the order constitutes a constitutionally impermissible prior restraint on publication in violation of the First Amendment to the United States Constitution. We have permitted The Reporter's Committee For Freedom Of The Press to file a brief as Amicus Curiae in support of the defendants.

On November 3, 1974, an editorial headlined "Change the judicial system" was published in the Rockford Register Star. It announced the

newspaper's decision not to endorse any candidates for judicial office. According to the editorial, the newspaper had reached this conclusion because of the "sorry record" of the judicial system in Winnebago County. The jury commission, the court's hours, the probation system, the administration of the court clerk's office, the lack of pretrial conferences, and the manner in which judges are appointed and slated were criticized in the editorial. In its discussion of the administration of the court clerk's office, the plaintiff Fred Cooper, chief deputy clerk, and another employee were referred to as "political hacks."

In January, 1975, Cooper filed the libel action and indicated that he would demand a jury trial. The defendants filed a motion asking that the case be heard by a judge from outside the 17th Judicial Circuit, which is composed of the counties of Winnebago and Boone. They also asked that the case be heard in the 13th or 14th Judicial Circuit where the newspaper's circulation is insignificant in comparison to its circulation in the 15th, 16th and 17th circuits. The motion for the change of venue from the judges of the 17th Judicial Circuit was granted. Judge James E. Bales of the 15th Judicial Circuit was assigned by the Illinois Supreme Court to preside in the case. On March 24, Judge Bales denied the motion for a geographical change of venue.

On March 26, an editorial was published in the Rockford Register-Republic under the headline, "Be alert to judicial excesses." The editorial indicated that the judiciary might be becoming too powerful after its important role in Watergate and considering itself "more equal" than the executive and legislative branches. As one of three examples of "judicial excesses" the editorial cited the recent denial of its motion for geographical change of venue. The editorial said, "In Winnebago County, Rockford Newspapers, Inc., has sought unsuccessfully to have a libel suit against it tried outside Rockford—not because of prejudice by the citizenry but because the judge in the case will be served by a court system here that Rockford Newspapers, Inc., has criticized." Two days later the plaintiff, Fred Cooper, filed a motion seeking a contempt citation, equal space on the defendant's editorial page, or an injunction to prohibit the defendants from editorializing about the libel action. The defendants contested the plaintiff's motion by filing a motion to strike on the ground that the judicial action referred to in the editorial had already taken place and that therefore the editorial did not obstruct the administration of justice. The defendants also alleged that the editorial would not affect the selection of a jury which was not imminent and would substantially impair the defendant's first amendment rights. After a hearing on the plaintiff's motion, the judge entered an order on May 5, 1975, which provided in pertinent part:

"IT IS FURTHER ORDERED that the defendants, ROCKFORD NEWSPAPERS, INC., a foreign corporation; COVE HOOVER, Publisher and President; and L. C. MILLER, Vice President, be and they are hereby temporarily enjoined and restricted from writing editorials and editorializing on the above entitled lawsuit in which they are party defendants during the further pendency of this litigation to insure a fair trial for all parties to this lawsuit, but such injunction shall not extend to, or limit the defendants from factual reporting of the news and proceedings in the above entitled lawsuit."

During the hearing on the motion the trial court said, "My chief concern is not what is said about me, but selecting a fair and impartial jury to hear the case. I do not believe, Mr. Hickey (defendants' counsel), that it is fair to the other side by editorializing and saying anything you want to about the case." Later the judge said, "I am not enjoining the defendant from reporting what goes on in regard to the case but from editorializing the newspaper's view of the Court's procedure in this case. In this manner people are influenced who might possibly be called as jurors." The May 5 order also set June 1 as the date for the completion of discovery in the case and May 13 as the date for a hearing on defendant's motion to dismiss.[1]

Defendants contend that there was not a sufficient showing of a threat to the administration of justice to justify the issuance of a pretrial order controlling editorials by the defendant at such an early stage in the proceedings and that in any event the overbreadth of the order invades defendants' first amendment rights.

Difficulties inherent in the task of reconciling the constitutional right of free expression with the constitutional right to a fair trial have been well documented. See *e.g., Sheppard v. Maxwell*, 384 U.S. 333, 16 L.Ed.2d 600, 86 S.Ct. 1507, 1515-16 (1966); *Estes v. Texas*, 381 U.S. 532, 14

---

[1] On May 11, prior to the filing of notice of appeal in this case, an article was printed in one of the defendants' newspapers under Cove Hoover's byline with the heading: "Judge Gags Us!" The author stated that in his opinion Judge Bales "erred in gagging the Rockford Newspapers." The article quoted from the transcript of the hearing on the motion for the injunction and cited Supreme Court decisions in support of the author's opinion. The next day Fred Cooper filed a motion for an order of court requiring the defendants to show cause why they should not be held in contempt. During oral argument on October 16, 1975, the appellate court learned that the original libel action has since been transferred from Judge Bales to Judge Boyle of the 16th Circuit and from Judge Boyle to Judge Reardon of the 18th Circuit. Judge Reardon has dismissed the libel suit on the defendants' motion. The show cause order in the contempt proceeding was argued before Judge Reardon on October 15, 1975, but we are advised in oral argument that he had not ruled on that motion.

L.Ed.2d 543, 85 S.Ct. 1628, 1631 (1965). See also *United States v. Dickinson*, 465 F.2d 496, 499 (5th Cir. 1972).

■■ An order enjoining expression prior to publication is particularly viewed with a heavy presumption against its validity. *Organization for a Better Austin v. Keefe*, 402 U.S. 415, 29 L.Ed.2d 1, 91 S.Ct. 1575, 1578 (1971).) Orders of trial courts attempting to control publicity in controversial cases by the issuance of orders directed against nonparty members of the media have regularly been invalidated on various grounds.[2] The plaintiff argues, however, that a newspaper party defendant editorializing its own pending libel suit involves a serious and imminent threat to a fair trial and therefore the newspaper was properly restrained.

While prior restraint orders directed to parties, attorneys or witnesses in criminal cases have been upheld under unusual circumstances (see e.g., *United States v. Tijerina*, 412 F.2d 661 (10th Cir. 1969), *cert. denied*, 396 U.S. 990, 24 L.Ed.2d 452, 90 S.Ct. 478 (1969); *Younger v. Smith*, 30 Cal.App.3d 138, 106 Cal. Rptr. 225 (1973); *Hamilton v. Municipal Court*, 270 Cal.App.2d 797, 76 Cal. Rptr. 168 (1969), *cert. denied*, 396 U.S. 985, 24 L.Ed.2d 449, 90 S.Ct. 479 (1969).), the problem of pretrial or trial publicity in a civil jury case has been seldom addressed. Such an order however, was the subject of an appeal in *CBS Inc. v. Young*, 522 F.2d 234 (6th Cir. 1975).

*CBS, Inc. v. Young* was a civil action which arose from the May 4, 1970, occurrence at Kent State University which resulted in the deaths of four students and the wounding of a number of others after the Ohio

---

[2] See, *e.g.*, *United States v. CBS, Inc.*, 497 F.2d 102 (5th Cir. 1974) (order forbid the making or publishing of sketches of courtroom scenes); *United States v. Dickinson*, 465 F.2d 496 (5th Cir. 1972) (order prohibited local reporters from publishing the details of the testimony given in a hearing held to determine whether the federal court should intervene in a state criminal prosecution); *Younger v. Smith*, 30 Cal.App.3d 138, 106 Cal. Rptr. 225, 231-32 (1973) (order prohibited the local newspaper from publishing any matters "with respect to the present cause except as occur in open court"); *Sun Co. v. Superior Court*, 29 Cal. App.3d 815, 105 Cal. Rptr. 873 (1973) (order prohibited publication of the true names or photographs of certain witnesses who were to be called by the prosecution in a murder case); *State ex rel. Miami Herald Publishing Co. v. Rose*, 271 So.2d 483 (Fla.App. 1972) (order restricting coverage of a murder case to those events occurring in open court); *Wood v. Goodson*, 253 Ark. 196, 485 S.W.2d 213 (1972) (order not to publish jury's verdict in a rape case in the morning edition so that jurors in a companion case could get into the courtroom without seeing it); *State ex rel. Superior Court v. Sperry*, 79 Wash.2d 69, 483 P.2d 608, *cert. denied*, 404 U.S. 939, 30 L.Ed.2d 252, 92 S.Ct. 272 (1971) (order restricting coverage to matters occurring in open court when the jury was present in a murder trial and also prohibited publication of any evidence ruled inadmissible by the court); *Phoenix Newspapers, Inc. v. Superior Court*, 101 Ariz. 257, 418 P.2d 594 (1966) (order not to publish proceedings in a pretrial habeas corpus hearing on a murder charge, jury to be impanelled that afternoon); *State v. Morrow*, 57 Ohio App. 30, 11 N.E.2d 273 (1937) (order not to publish names of grand jurors, names of witnesses, or matters under investigation by the grand jury).

National Guard had been called to the campus to quell a demonstration. Various damage actions were consolidated for trial. The court of appeals noted that there had been massive publicity concerning the episode and further publicity had been attracted to it by the criminal trial of certain members of the Ohio National Guard and by various other proceedings and appeals of the civil portion of the action. It also observed that the trial court had expressed concern because shortly before the trial a memorial service was to be held on the campus. Scheduled speakers were persons who had been prominent in the antiwar movement, and the court felt the service could have an inflammatory effect on prospective jurors in the civil case. The trial court therefore entered an order addressed to all counsel and court personnel and all parties concerned with the litigation "whether plaintiffs or defendants, their relatives, close friends, and associates" to refrain from "discussing in any manner whatsoever these cases with members of the news media or the public." CBS filed a petition in the Circuit Court of Appeals for a writ of mandamus directed against the judge of the trial court to require him to vacate the order on the grounds that it violated first amendment rights of the Constitution of the United States. The 6th Circuit Court of Appeals agreed with CBS and issued its writ of mandamus. It appeared that the parties to the civil action had made no objection to the order. It also appeared that approximately 1 week was required to impanel the jury, that only one juror was excused for cause by reason of having received a solicitation for litigation funds, and that in general the impaneling of the jury had been effected with comparatively little difficulty. The Circuit Court of Appeals found that there was no substantial evidence to justify the conclusion that a clear and imminent danger to the fair administration of justice existed because of the publicity and that the presumption against the constitutional validity of the order had not been met or overcome.

While *CBS v. Young* was a civil case, the 6th Circuit Court of Appeals applied general concepts applicable to prior restraint orders without distinguishing between civil and criminal cases.

■■ Pretrial orders governing publicity are to be issued, according to one line of authority, only upon a finding that a reasonable likelihood of a threat to fair administration of justice exists (see *United States v. Tijerina*, 412 F.2d 661 (10th Cir. 1969); *Younger v. Smith*, 30 Cal.App.3d 138, 106 Cal. Rptr. 225 (1973); or, according to another line of authority, they are to be issued only upon a finding that "clear and present danger"[3]

---

[3] Sometimes phrased as "serious and imminent danger" to the administration of justice. See *Bridges v. California*, 314 U.S. 252, 86 L.Ed. 193, 62 S.Ct. 190, 194 (1941).

to the administration of justice exists. (See *United States v. CBS, Inc.,* 497 F.2d 102 (5th Cir. 1974); *CBS Inc. v. Young; Chicago Council of Lawyers v. Bauer,* 522 F.2d 242 (7th Cir. 1975).) Circumstances before us do not support a finding either that a clear and present danger to the administration of justice (or a serious and imminent danger) exists or that a reasonable likelihood of a threat to fair administration of justice exists.

In *United States v. Dickinson,* 465 F.2d 496 (5th Cir. 1972), the court stated (page 507):

> "It is the nature of the news that it is so readily forgotten—time can erase impressions, even sensational ones. Thus, while prejudicial news coverage may poison the minds of jurors or immediate prospective jurors for the present, the contamination may be only temporary * * *."

The fact that "[a] civil case may last for years just in the discovery stage" was noted in *Chicago Council of Lawyers v. Bauer,* 522 F.2d 242, 258 (7th Cir. 1975). The United States Supreme Court has stated that "qualified jurors need not, however, be totally ignorant of the facts and issues involved." *Murphy v. Florida,* 421 U.S. 794, 799-800, 44 L.Ed.2d 589, 594-95, 95 S.Ct. 2031, 2036 (1975).

The order before us was precipitated by defendants' March 26th editorial. The editorial was published two months prior to the date set for completion of discovery in the case. It did not refer to the law suit by name or identify the plaintiff. Moreover, a motion to dismiss the suit was pending which suggested that more time would be needed for discovery if there were an adverse ruling on the motion to dismiss and defendants were to appeal. In this connection we are not required to remain unaware of the fact that a considerable burden is placed on a plaintiff to prove the libel of a public official. (See *New York Times Co. v. Sullivan,* 376 U.S. 254, 11 L.Ed.2d 686, 84 S.Ct. 710, 726 (1964).)[4] Additionally, the nature of the subject matter of the libel suit was not inflammatory when compared with other cases involving actual or potential publicity detrimental to a fair trial. See *Sheppard v. Maxwell,* 384 U.S. 333, 16 L.Ed.2d 600, 86 S.Ct. 1507, supra; *Younger v. Smith,* 30 Cal.App.3d 138, 106 Cal. Rptr. 225 (1973).

Plaintiff has argued quite persuasively that a newspaper with a circulation of over 60,000 daily in Winnebago County (which we note has a total population at the last census of 246,623) is in a position to exercise considerable influence over jurors in its own law suit and thus to conceivably prevent a fair trial to the plaintiff. We do not rule out the possi-

---

[4] While we give the observation no weight in our opinion, the court is aware from experience that because of this burden few libel suits reach the trial stage.

bility that there may be circumstances where this kind of influence may be guarded against by a trial court. However, even where an order is justified to achieve the purpose of insuring a fair trial it must be drawn narrowly so as not to prohibit speech which will be within first amendment rights and which will not prevent a fair trial. See *Carroll v. President and Commissioners of Princess Anne*, 393 U.S. 175, 21 L.Ed.2d 325, 89 S.Ct. 347, 353 (1968); *Shelton v. Tucker*, 364 U.S. 479, 5 L.Ed.2d 231, 81 S.Ct. 247, 252 (1960); *Speiser v. Randall*, 357 U.S. 513, 2 L.Ed.2d 1416, 78 S.Ct. 1332, 1342 (1958).

The order in this case is clearly over-broad. It is not limited in terms of territory nor of time. Further, it appears that the defendant corporation may own several newspapers, some of which may not be situated in Winnebago County or may have only limited circulation in that county. Yet, as written, the order would apply to all newspapers published by the defendant corporation regardless of where situated.

■■ It is also implicit in the terms of the order that the judge has assumed that all editorializing on the law suit would have a prejudicial effect on efforts to impanel the jury and on a jury's efforts to reach a decision in the case based on the evidence adduced in court. However, the court prohibits not only comments and criticisms which might erroneously give the public the impression that the defendants have been unfairly treated from the inception of the law suit, but all editorial comments on anything that occurs during the pendency of the suit. Under the broad terms of the order it could include editorials which pose a serious threat to the plaintiff's ability to have its case tried before an unprejudiced jury, but it could also refer to those which impose no such threat. Thus, even if it were assumed that there was sufficient justification for curtailing first amendment utterances, the order is not drawn as narrowly as constitutionally required. See *Chase v. Robson*, 435 F.2d 1059, 1061 (7th Cir. 1970).

For the reasons which we have stated we reverse the restraining order issued by the trial court.

Reversed.

GUILD and HALLETT, JJ., concur.