FRED R. COOPER, Plaintiff-Appellee, *v.* ROCKFORD NEWSPAPERS, INC., *et al.*, Defendants—(ROCKFORD NEWSPAPERS, INC., *et al.*, Contemnors-Appellants.)

Second District   No. 76-204

Opinion filed June 30, 1977.

Francis E. Hickey, of Francis E. Hickey, Ltd., Peter DeBruyne, and Thomas D. Luchetti, all of Rockford, for appellants.

William J. Scott, Attorney General, of Chicago (Herbert Lee Caplan, Assistant Attorney General, of counsel), for appellee.

Wendy U. Larsen and William H. Luking, both of Ross, Hardies, O'Keefe, Babcock & Parsons, Milton I. Shadur, Robert J. Vollen, and John McGinnis, all of Chicago, for *amicus curiae.*

Mr. JUSTICE SEIDENFELD delivered the opinion of the court:

Defendants, Rockford Newspapers, Inc., and Cove Hoover, its former publisher and president, appeal from an order finding them in contempt and fining the newspapers $2,000 and Hoover $1,000. This is the third in a series of appeals arising from plaintiff's charge that he was libeled by the defendants. Following the filing of Cooper's libel complaint a temporary injunction was issued at his request which enjoined the defendants from editorializing about the libel suit. A petition was thereafter filed by the plaintiff seeking to find defendants in contempt for publishing an editorial allegedly in violation of the temporary injunction. The hearing on the contempt petition was continued pending the resolution of the appeal from the temporary injunction order. Subsequently the original libel suit was dismissed for failure to state a cause of action. On plaintiff's appeal we affirmed the judgment of dismissal. (See *Cooper v. Rockford Newspapers, Inc.,* 50 Ill. App. 3d 247 (1977).) Prior to the contempt hearing, upon defendants' appeal from the order issuing the temporary injunction, we reversed on the basis that the restraint was unconstitutional on first amendment grounds. *Cooper v. Rockford Newspapers, Inc.,* 34 Ill. App. 3d 645.

Following our mandate in the appeal from the temporary injunction the trial court held a hearing on the contempt petition. This resulted in the order adjudging defendants in contempt which is the subject of this appeal. The Reporters Committee for Freedom of the Press and the Roger Baldwin Foundation of the American Civil Liberties Union have intervened and filed amicus curiae briefs. The Attorney General of the State of Illinois has intervened and filed a brief on behalf of the plaintiff.

The principal issue before us is whether the contempt order was proper following the reversal of the underlying injunction on constitutional grounds. An alternative question is whether the editorial violates the restraining order.

The defendants first contend that the temporary injunction which we found to be an unconstitutional prior restraint on publication is a void

judgment or is "transparently invalid" and therefore cannot support a contempt judgment.

■■ As a general rule, an injunction order entered by a court having jurisdiction over the person and the subject matter is not "void," and although it may be declared erroneous it, again as a general rule, must be obeyed and will support a contempt order. See, *e.g.*, *United Mine Workers of America Union Hospital v. UMW*, 52 Ill. 2d 496, 501 (1972); *Board of Trustees v. Cook County Teachers Union*, 42 Ill. App. 3d 1056, 1063 (1976); *People v. Mulgrew*, 19 Ill. App. 3d 327, 332 (1974). See also *Walker v. City of Birmingham*, 388 U.S. 307, 18 L. Ed. 2d 1210, 87 S. Ct. 1824, 1829 (1967).

The trial court clearly had jurisdiction over the persons of the defendants in the original libel action who were found in contempt; and it had jurisdiction to enter the preliminary injunction order pursuant to sections 1 and 3—1 of the Injunction Act (Ill. Rev. Stat. 1975, ch. 69, pars. 1, 3—1).

The defendants do not dispute the general rule but argue that it has no application here. They contend that the temporary injunction which we reversed (34 Ill. App. 3d 645) was beyond the court's authority to issue either on the theory that no prior restraint of publication can be constitutionally valid or on the basis that the particular order was transparently unconstitutional. Related to the latter argument is the claim that an order clearly in excess of the court's authority may be challenged by an appeal from an adjudication of contempt.

■■ The argument that every prior restraint on press reporting is forbidden under the first amendment is not fully supported. In the cited case of *Nebraska Press Association v. Stuart*, 427 U.S. 539, 569, 49 L. Ed. 2d 683, 704, 96 S. Ct. 2791, 2808 (1976), Mr. Chief Justice Burger states:

"However difficult it may be, we need not rule out the possibility of showing the kind of threat to fair trial rights that would possess the requisite degree of certainty to justify restraint. This Court has frequently denied that First Amendment rights are absolute and has consistently rejected the proposition that a prior restraint can never be employed."

Likewise in our opinion, filed prior to the *Nebraska Press Association* case, which ruled on the preliminary injunction, we did not rule out the possibility that an order could be drawn "so as not to prohibit speech which will be within first amendment rights and which will not prevent a fair trial." (*Cooper v. Rockford Newspapers, Inc.*, 34 Ill. App. 3d 645, 652 (1975).) We therefore conclude that the order is not void since the court had jurisdiction over the subject matter and the parties.

There is dicta in *Walker v. City of Birmingham*, 388 U.S. 307, 315, 18 L.

Ed. 2d 1210, 1217, 81 S. Ct. 1824, 1829 (1967) ("And this is not a case where the injunction was transparently invalid or had only a frivolous pretense to validity") from which it might be concluded that an order clearly invalid on its face may be tested by violation without subjecting a person to punishment for contempt. However, even if we assume this as an exception to the general rule that orders of a court with jurisdiction over the person and subject matter must be obeyed until modified or reversed, the state of the law prior to *Nebraska Press Association* could not be fairly said to have made the order transparently invalid or frivolous at the time it was issued.

The argument that an order may be so clearly in excess of a court's lawful authority as to permit a challenge to it by an appeal from an order of contempt for violating the order is supported in some jurisdictions. (See *In re Berry*, 68 Cal. 2d 137, 147, 436 P.2d 273, 280, 65 Cal. Rptr. 273, 280, (1968); *State ex rel. Superior Court v. Sperry*, 79 Wash. 2d 69, 78, 483 P.2d 608, 613 (1971); *Wood v. Goodson*, 253 Ark. 196, 203, 485 S.W.2d 213, 217 (1972).) We have found no similar expression of the doctrine of "excess of jurisdiction" as a defense to the charge of disobedience of a court order in the Illinois cases.

There is, however, a line of Illinois cases cited by the defendants in which alleged violations of prior restraints have not resulted in punishment for contempt. Collateral attack on the validity of pretrial production orders has been permitted as a defense to a charge of contempt for failure to produce. (See *Stimpert v. Abdnour*, 24 Ill. 2d 26, 27 (1962); *People ex rel. Hawthorne v. Hamilton*, 9 Ill. App. 3d 551, 553 (1973); *People v. Smith*, 5 Ill. App. 3d 429, 430 (1972). *Cf. People v. Ryan*, 30 Ill. 2d 456, 462 (1964).) These cases apparently rest on the fact that the production order itself, unlike the injunction order before us, is not itself appealable. The appeal from the contempt citation therefore has been held to be a permissible way to test the validity of the production order.

*People v. Sears*, 49 Ill. 2d 14 (1971), does give some support to defendants' argument although it is perhaps distinguishable. The jurisdiction over the party and the subject matter was certainly present in the classical sense. Yet the court reversed the contempt order, stating:

"We hold, therefore, that there may be circumstances under which the circuit court will have jurisdiction to direct that witnesses be subpoenaed to appear before a grand jury. The preservation of the historic independence of the grand jury, however, requires that such supervisory power be exercised only when failure to do so will effect a deprivation of due process or result in a miscarriage of justice. It is the opinion of the majority of members of this court that the circumstances shown here do not

furnish a sufficient basis for the action of the court and the order holding Sears in contempt for refusing to subpoena the witnesses is therefore reversed." 49 Ill. 2d 14, 31.

The fact that a restraining order either interferes with a right constitutionally guaranteed or is so vague and overbroad that it may do so does not of itself permit the defendant to disobey the order. As stated in *Walker v. City of Birmingham*:

> "[T]he way to raise that question was to apply to the Alabama courts to have the injunction modified or dissolved." (388 U.S. 307, 317, 18 L. Ed. 2d 1210, 1217, 87 S. Ct. 1824, 1830.)

And:

> "This case would arise in quite a different constitutional posture if the petitioners, before disobeying the injunction, had challenged it in the Alabama courts, and had been met with delay or frustration of their constitutional claims. But there is no showing that such would have been the fate of a timely motion to modify or dissolve the injunction." (388 U.S. 307, 318, 18 L. Ed. 2d 1210, 1218, 87 S. Ct. 1824, 1831).

See also *Maness v. Meyers*, 419 U.S. 449, 42 L. Ed. 2d 574, 95 S. Ct. 584 (1975).

The claim that the temporary injunction was vague, overbroad and unconstitutional under the first amendment was, of course, argued to the trial court in this case, but the editorial charged as contemptuous was published prior to the defendants' filing a notice of appeal from the temporary injunction order. Plaintiff argues that the defendants are therefore barred because they did not avail themselves of an orderly attack on the validity of the injunction order before "defying" it by the publication of the editorial. We do not agree, given the particular background and circumstances before us.

■■ In *Maness v. Meyers*, 419 U.S. 449, 461, 42 L. Ed. 2d 574, 584, 95 S. Ct. 584, 592, the court recognized that where the injury flowing from an error is irreparable and the constitutional right involved is one with "ancient roots" strongly implanted in the adversary system, the violation may not be punishable by contempt if the order is proved invalid. We find this reasoning to be particularly apt under the circumstances before us.

It could, of course, be argued that no great loss of constitutional rights is involved in this case if we hold that the defendants should have withheld their comments pending the orderly—albeit slow—resolution of the propriety of the restraining order in the reviewing courts, or suffer the consequences even if they are upheld on review. But one person's "orderly processes" may well be another's "chilled speech". Thus, in *Nebraska Press Association*, the Supreme Court noted:

"[P]rior restraints on speech and publication are the most serious and the least tolerable infringement on First Amendment rights. * * *

A prior restraint, * * * has an immediate and irreversible sanction. If it can be said that a threat of criminal or civil sanctions after publication 'chills' speech, prior restraint 'freezes' it at least for the time." (427 U.S. 539, 559, 49 L. Ed. 2d 683, 697-8, 96 S. Ct. 2791, 2802-03).

And in *Elrod v. Burns*, 427 U.S. 347, 373-74, 49 L. Ed. 2d 547, 565-66, 96 S. Ct. 2673, 2690 (1976), the plurality opinion states:

"The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury. See *New York Times Co. v. United States*, 403 U.S. 713 (1971)."

The right of news media to comment on the court system is "at the core of First Amendment values." (*Nebraska Press Association*, 427 U.S. 539, 587, 49 L. Ed. 2d 683, 714, 96 S. Ct. 2791, 2816 (1976). "The timeliness of political speech is particularly important." (*Elrod v. Burns*, 427 U.S. 347, 374 n.29, 49 L. Ed. 547, 566 n.29, 96 S. Ct. 2673, 2690 n.29 (1976); *Carroll v. President of Princess Anne*, 393 U.S. 175, 182, 21 L. Ed. 2d 325, 332, 89 S. Ct. 347, 352). The deprivation of the right to comment even for a short time therefore results in irreparable harm. The same "freezing" of speech may be accomplished and the censorship permitted if the court may punish for violation of an invalid order restricting comment about the court system or its operation in a particular case. While in many cases it may be a necessary rule of law that a party must be held responsible in contempt for violating a restraining order which is later found to be erroneous, it seems on balance of competing constitutional rights of free press and fair trial, considering also the basic integrity of the court, to be inappropriate on the particular facts of this case.

"Contempt of court has been generally defined as conduct calculated to embarrass, hinder or obstruct a court in its administration of justice or to derogate from its authority or dignity, or bring the administration of law into disrepute." (*In re Estate of Melody*, 42 Ill. 2d 451, 452 (1969). See also *People ex rel. Kunce v. Hogan*, 67 Ill. 2d 55 (1977); *People v. Denson*, 59 Ill. 2d 546, 554-55 (1975).) In this case there was no actual or imminent interference with the administration of justice. The trial judge who entered the temporary injunction stated that his only purpose was to prevent influencing people who might possibly be called as jurors. (*Cooper v. Rockford Newspapers, Inc.*, 34 Ill. App. 3d 645, 648.) In fact the publication of the editorial in this case, conceding that it is in violation of the court's order, was a very minimal interference with the course of justice involved in the basic dispute between Cooper and the newspaper. As we have noted in our prior opinion there was no imminent and serious

threat to the administration of justice when the original restraining order was entered on May 5, 1975. Similarly, there could have been no such effect on May 11, 1976, when the allegedly offensive editorial was printed under defendant Hoover's by-line. The publication did not, in fact, interfere with the pending suit. Counting from the dates when the order was entered and presumably violated the case could not have reached the point of concern for the impact on a future jury within any determinate time. And it turned out that the libel suit was dismissed at the pleading stage, an action which we have affirmed in *Cooper v. Rockford Newspapers, Inc.*, 50 Ill. App. 3d 247 (1977). Under the circumstances there was no real threat posed to the constitutional right to a fair trial.

While it may be argued that any violation of a court's order impugns its authority, it is difficult to see how the court's authority was impugned when we consider the chronology of the various appeals arising from the initial libel suit. It is also difficult to see how in this regard the case differs from the effect on the court in the series of cases previously cited in which the validity of production orders or an order to subpoena witnesses before a grand jury had been allowed to be tested in an appeal from a contempt order.

Further, there was no apparent feeling by the trial court that it was being seriously impugned, since the contempt hearing itself was delayed until after the libel suit had been dismissed for failure to state a cause of action and until after this court had found the original restraining order unconstitutional.

On balance we conclude that the defendants were not subject to the penalty of contempt for asserting their right to comment on the operation of the court system in general or in regard to the particular litigation as to which they were parties because they published in the first instance. Even though it is not presently fully settled law that every prior restraint on pure speech is constitutionally invalid (*Nebraska Press Association v. Stuart*, 427 U.S. 539, 49 L. Ed. 2d 683, 96 S. Ct. 2791),[1] the heavy presumption against such prior restraints on pure speech must be heavily weighed and deprivation of strongly rooted first amendment rights deemed an irreparable injury, to be permitted, if at all, when the competing interests are overriding.

---

[1] It should be noted, however, that in separate concurring opinions Mr. Justice White had "grave doubt ° ° ° whether orders with respect to the press such as were entered in this case would ever be justifiable." (427 U.S. 539, 570-71, 49 L. Ed. 2d 683, 704, 96 S. Ct. 2791, 2808.) Mr. Justice Powell wrote also in a concurring opinion "to emphasize the unique burden" and "heavy presumption against the constitutional validity of a court order restricting pretrial publicity" (427 U.S. 539, 571 n.1, 49 L. Ed. 2d 683, 704, 705 n.1, 96 S. Ct. 2791, 2808 n.1); and the separate concurring opinion by Mr. Justice Brennan, joined in by Mr. Justice Stewart and Mr. Justice Marshall, stated that resort to "prior restraints on the freedom of the press is a constitutionally impermissible method" to guarantee the defendant

■■ Under the circumstances the case before us involves no actual or imminent interference with the administration of justice. The temporary injunction was expressly premised as a protection of future jury selection. The order was issued in a questionable libel case at a time when it was pending on the pleadings, and later it did not survive a motion to dismiss. Under the particular facts there was no real confrontation between the first amendment and other strong constitutionally protected interests.

*Walker v. City of Birmingham*, 388 U.S. 307, 18 L. Ed. 2d 1210, 87 S. Ct. 1824 (1967), principally relied upon by plaintiff is distinguishable. *Walker* did not involve a prior restraint on pure speech with the accompanying heavy presumption against the constitutional validity of the order. The confrontation was between conduct which challenged the strong interests of the State and local government to regulate the use of their streets and other public places and to prevent threatened disorder which the ex parte complaint alleged the police were powerless to control. While of less significance, the defendant disobeyed the ex parte order without any prior recourse to the courts. Here the order was not entered ex parte, and the defendants respectfully argued to the trial court the constitutional issues which we found compelling on appeal before the alleged disobedience.

*United States v. Dickinson*, 465 F.2d 496 (5th Cir. 1972), cited by the plaintiff, does appear to apply the *Walker* rationale to a case which involves pure speech. To the extent that *Dickinson* does not recognize the strong presumption against the validity of prior restraints on pure speech and the irremedial nature of the injury inflicted by such an order stated in later opinions of the United States Supreme Court, including *Nebraska Press Association*, we are not persuaded by it. If the case stands for the rule that no order prohibiting pure speech may be disobeyed while in effect, we do not agree. We choose instead a path which in the circumstances of each case will effectively and fairly balance first amendment rights, the right of a party to an impartial jury, and the public's interest in and respect for the administration of justice in the courts.

■■ In this case the defendants' first amendment rights may be preserved without impairing either the right of a party to a trial before an impartial jury or the interests we all have in preserving the integrity of the courts. They should not therefore be punished for contempt.

---

a trial by an impartial jury (427 U.S. 539, 572, 49 L. Ed. 683, 705, 96 S. Ct. 2791, 2809). In a separate concurring opinion Mr. Justice Stevens agrees that the judiciary is capable of protecting a defendant's right to a fair trial without enjoining the publishing of information and "that it may not do so" (427 U.S. 539, 617, 49 L. Ed. 2d 683, 731, 96 S. Ct. 2791, 2830). He leaves the door open only to a parade of horribles which he states might or might not change his opinion if the issue were squarely raised.

In the view that we have taken we do not reach defendants' further claim that the editorial did not in fact violate the injunction. The judgments of contempt are reversed.

Reversed.

GUILD and WOODWARD, JJ., concur.