Joseph J. CADA, et al., etc., Plaintiffs,

v.

COSTA LINE, INC., et al., Defendants.

No. 79 C 3937.

United States District Court,
N. D. Illinois, E. D.

Nov. 30, 1981.

· Edward T. Joyce, James E. Dahl, Steven J. Rotunno, Joyce & Kubasiak, Chicago, Ill., for plaintiffs.

Michael A. Snyder, S. Michael Ritter, Bradley, McMurray, Black & Snyder, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Joseph C. and Jean C. Cada ("Cadas") have filed this class action against Costa Line, Inc. ("Line") and its parent company, Costa Armatori, S.p.A. ("Armatori"). Judge McGarr (to whom this action was initially assigned) has certified a class of all passengers who have claims arising out of the March 30, 1979 fire on board one of Armatori's cruise ships.

Defendants (collectively "Costas") have moved to dismiss a large number of class members who have settled their claims individually. Cadas have moved to "clarify" the scope of the class, in essence challenging Costas' attempts to dismiss almost any plaintiff from the class. For the reasons

stated in this memorandum opinion and order, Costas' motion is granted. This opinion thus responds to Cadas' "clarification" motion as well.

### Facts

Armatori's ship, *Angelina Lauro*, suffered a fire during a Caribbean cruise. Although none of the approximately 650 passengers on board was injured, the fire completely destroyed the passengers' personal property and their use of the ship for the remainder of their scheduled cruise.

Cadas' suit, brought August 17, 1979 in the Circuit Court of Cook County, named only Line as a defendant. Line removed the action to this District Court September 21, 1979. On January 9, 1980 [1] Cadas filed an amended complaint adding Armatori as a defendant. Armatori moved for summary judgment February 22, and on March 7 Judge McGarr held a status hearing in the case.

At the March 7 hearing Judge McGarr told Costas' counsel to hold off on further settlement negotiations with passengers pending his decision on the summary judgment issue. [2] On April 21 Judge McGarr denied Armatori's summary judgment motion. On May 1 Armatori filed a motion asking permission to continue its negotiation and settlement of passenger claims. Judge McGarr granted the motion May 27 on condition that a letter would be sent to the passengers adequately disclosing that they could await the developments in the proposed class action if they so chose. On June 10 Judge McGarr issued an order specifying the content of the letter to passengers. Then on August 15 Judge McGarr certified a plaintiff class of "all individuals who were registered as passengers on the Angelina Lauro on Friday, March 30, 1979."

After the class action certification Judge McGarr continued to permit settlement of claims between individual passengers and Armatori. On December 9 Judge McGarr imposed a time limitation on such settlements, ruling that the letter accompanying the Notice of Class Action should specify a 90-day limit for completion of settlement negotiations with passengers. [3] That 90-day period ended April 16, 1981.

Two issues are posed by the current motions. One deals with Armatori's settlements with passengers themselves; the other, with the effect of insured or partially-insured claims on such settlements. [4]

### Passengers' Claims Generally

Costas contend that passengers with whom they have settled at any time up to April 16, 1981 [5] ought to be dismissed from the action. In response to that common sense argument Cadas cite this District Court's former Civil Rule 22, which was still in effect at all times relevant to the current motion. Cadas charge that:

(1) Communications between Armatori and settling passengers were in violation of Civil Rule 22. [6]

---

1. All dates hereafter referred to without a year designation are 1980 dates.

2. At that time no class action determination had yet been made under Fed.R.Civ.P. ("Rule") 23(c).

3. Rule 23(c)(2)(A) specifically calls for such establishment of an opt-out date.

4. Armatori encouraged passengers to file claims with their insurers to expedite partial or full recovery by passengers. Insurers' payments to insured passengers of course gave rise to subrogation rights. Some of Armatori's later settlements were with both a passenger and his or her insurer. Others were with passengers alone.

5. Some time necessarily elapses between reaching a settlement agreement and the preparation and execution of the releases (passengers came from widely-scattered locations). For that reason the settlement date is not controlled by the dating of settlement documents.

6. Except for its second paragraph (inapplicable here) Civil Rule 22 provided:

In every potential and actual class action under Rule 23, F.R.Civ.P., all parties thereto and their counsel are hereby forbidden, directly or indirectly, orally or in writing, to communicate concerning such action with any potential or actual class member not a formal party to the action without the consent of and approval of the communication by order of the Court. Any such proposed communication shall be presented to the

(2) Such violations made many of the settlements void, or at least voidable at the passengers' option.

██ Clearly the class action provisions of the Federal Rules of Civil Procedure do *not* impair the validity of the settlements involved here. Individual class members who choose to settle (or to litigate or indeed just to forget about) their claims are simply opting out of the class, an opportunity available to them until there has been a class determination under Rule 23(c) and the date specified in the class notice in accordance with Rule 23(c)(2)(A)—in this case April 16, 1981—has passed. Rule 23(e) is aimed at a different target. It requires court approval of settlement of the class action itself, not of individual claims. *In re General Motors Corp. Engine Interchange Litigation*, 594 F.2d 1106, 1138–39 (7th Cir. 1979).

Thus Cadas are indeed relegated to reliance on former Civil Rule 22. That rule applied to class actions even before certification—it referred to "potential" as well as actual class actions and class members—and forbade all communication between adverse parties and potential class members without court consent and approval of the communication.

██ Civil Rule 22 was plainly invalid. As a blanket prohibition against such communications, without requiring any proof and findings of specific need, it was unauthorized by and was inconsistent with Rule

23. *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 99–102, 101 S.Ct. 2193, 2199–2201, 68 L.Ed.2d 693 (1981); *Williams v. United States District Court*, 658 F.2d 430, 434–36 (6th Cir. 1981). In this Court's view (shared with the substantial majority of the Court of Appeals for the Fifth Circuit) it suffered an even more basic flaw: It constituted a prior restraint doomed by the First Amendment. *Bernard v. Gulf Oil Co.*, 619 F.2d 459 (5th Cir. 1980).[7]

██ Such invalidity does not however end the matter. Under the notion of "the void order and the duty to obey,"[8] a litigant is obligated (with rare exceptions) to heed even an invalid court order until it has been *held* invalid—and may be found in contempt for failing to do so. That concept has extended even to the exercise of First Amendment rights. *Walker v. City of Birmingham*, 388 U.S. 307, 315–20, 87 S.Ct. 1824, 1829–31, 18 L.Ed.2d 1210 (1967); but *cf. Cooper v. Rockford Newspapers, Inc.*, 50 Ill.App.3d 250, 256–57, 8 Ill.Dec. 508, 365 N.E.2d 746, 750–51 (2d Dist. 1977); see *Walker*, 388 U.S. at 315, 87 S.Ct. at 1829 ("And this is not a case where the injunction was transparently invalid or had only a frivolous pretense to validity"). So even though Civil Rule 22 is no longer in effect, and though it suffered fatal defects while it did exist, this case must be analyzed in terms of the Rule's having been in force while Armatori's settlement discussions were going on.

court in writing with a designation of or description of all addressees and with a motion and proposed order for prior approval by the Court of the proposed communication and proposed addressees. The communications forbidden by this rule, include, but are not limited to, (a) solicitation directly or indirectly of legal representation of potential and actual class members who are not formal parties to the class action; (b) solicitation of fees and expenses and agreements to pay fees and expenses, from potential action; (c) solicitation by formal parties to the class action of requests by class members to opt out in class actions under subparagraph (b)(3) of Rule 23, F.R.Civ.P.; and (d) communications from counsel or a party which may tend to misrepresent the status, purposes and effects of the action, and of actual or poten-

tial Court orders therein, which may create impressions tending, without cause, to reflect adversely on any party, any counsel, the Court, or the administration of justice. The obligations and prohibitions of this rule are not exclusive. All other ethical, legal and equitable obligations are unaffected by this rule.

7. Like the concurring Judges in the Court of Appeals, the Supreme Court found it unnecessary to reach that issue, 101 S.Ct. at 2199, 2201–02. Nonetheless the thrust of its analysis in Rule 23 terms was much like that in the classic prior restraint cases.

8. Apologies are tendered for borrowing the title of the article by Hugh Cox, Esq. in 16 U.Chi.L. Rev. 86 (1948).

■ Cadas' contentions cannot prevail in any event. Civil Rule 22 applies to "parties" to an action. Until Cadas amended their Complaint January 9, 1980 to add Armatori as an additional defendant (indeed until Armatori was served February 4), Armatori was not in literal terms subject to Civil Rule 22.[9] From that time to March 7 it was in technical breach of the Rule by negotiating with prospective class members for settlement of their individual claims. But this Court is not prepared to void settlements reached during that period for several reasons:

First, the purpose of Civil Rule 22 was to deal with *abuses* stemming from unauthorized communications[10]—overreaching, misrepresentation, nondisclosure and such matters. Where as here many months have passed with no complaints from the settling passengers on any of those (or other) grounds, the *purpose* of the Rule has not been disserved, though its letter may have been violated. It would be a Draconian punishment to upset so many settlements, entered into at arms' length and not complained of by the contracting parties.

Second, the issue of settlement negotiations was first broached by Costas' counsel at the March 7 status hearing, when they asked whether their client should continue then-pending discussions. Judge McGarr's response was "to stand fast on further settlement negotiations" until he ruled on Armatori's summary judgment motion—to "defer them, stall them . . . to give me time to rule on this motion." Judge McGarr did *not* charge counsel or Armatori with having breached Civil Rule 22 by settlement negotiations *before* the hearing, even though it was entirely obvious that had been the case. Judge McGarr's admonition was prospective, with no hint of impropriety as to any

past settlements. Apparently he viewed those in a real world sense, as having reduced the scope of controversy as and when the case changed from a potential to actual class action. Under the circumstances this Court will not alter that view.

■ Third, Cadas (through their counsel) evinced the same perception of matters as Judge McGarr. At the March 7 hearing the following colloquy took place after Costas' counsel had posed the issue of continuing settlement discussions:

The Court: What is your view with regard to these settlements that are now going forward?

Mr. Rotunno (Cadas' counsel): Well, Judge, the view is we really haven't thought about it too much. Our understanding is that when a class action lawsuit is filed, no settlement can be undertaken . . . I think we would like at least some time to at least respond to your Honor as to how we feel the issue of continued settlement should proceed.

The Court: . . . What additional discovery do you want?

Mr. Rotunno: Well, we may want to take a deposition to determine if they knew that this lawsuit, Costa Armatori S.p.A. knew that this lawsuit was pending.

Mr. Snyder (Defendants' counsel): I'll stipulate to that, that Costa Armatori S.p.A. knew the lawsuit was filed . . .

Thus not later than March 7 Cadas' counsel knew that settlement discussions between Armatori and individual passengers had been going on for some time. There was no cry of "Foul"—of violation of court rules, of disadvantaging class members by settling and paying their claims.[11] It was some 18

---

9. This Court has considered the choice between a strictly literal reading of that Rule and an expansive one (under which Armatori, the parent corporation carrying on its own negotiations as the real party in interest, would be swept up because its subsidiary Line was a party). In view of the anomaly always posed by holding a litigant responsible for violation of an invalid order, and particularly so where the order is a general one not addressed to the specific litigant in a specific lawsuit, the Court opts for the literal and narrow reading.

10. In fact the Rule was captioned "For Prevention of Potential Abuse of Class Actions."

11. On October 28 (more than seven months later) Cadas' counsel wrote Costas' counsel (emphasis added):

Finally, please provide us with a list of the names and addresses of the passengers who

months later, in August 1981, that Cadas first raised objections to the pre-March 7, 1980 negotiations. Estoppel may not lie, for Armatori did not change its position as to those settlements (with the limited exception mentioned hereafter) in reliance on Cadas' silence and inaction. But some element of waiver must be factored into the equation in addition to the first two considerations already discussed.

 So much for the settlements before March 7. This Court will not disrupt concluded transactions at the behest, not of the passengers who have been paid and satisfied, but of class counsel who have a personal stake in expanding the size of the class. As for the post-March 7 period, the conclusion is the same:

1. Between March 7 and May 27 only some 11 sets of settlement documents were executed, all in implementation of agreements reached before Judge McGarr suggested a freeze on further negotiations. Those were really pre-March 7 settlements to which the earlier analysis applies. Moreover, given Cadas' counsel's lack of objection at the March 7 hearing Cadas are estopped to challenge such settlements, which may fairly be considered to have involved reliance and a change in position by Armatori.

2. At the May 27 status hearing Judge McGarr gave Armatori the go-ahead for further negotiations:

I see no reason why settlement should not be going forward, as long as the passengers are fully informed that they have an option to await the developments of the class action, if they care to.

Armatori then proceeded with further negotiations, Judge McGarr having issued a June 10 memorandum opinion and order dictating the content of the disclosure letter to be sent to passengers. Estoppel applies with full vigor to prevent Cadas' attack on all settlements during the entire period (see the preceding textual discussion and n.11).

Costas' motion to dismiss is therefore granted as to all passengers with whom Armatori has settled and who did not also collect part of their claims from their insurers (or, if they did, whose insurers joined in their negotiations with Armatori). It remains to consider what effect is to be given to settlements with passengers whose insurers paid part of their claims and did not thereafter pursue Armatori.

*Insurers' Claims*

Cadas object to the dismissal of settling passengers whose insurers under homeowners' policies had paid part of their claimed losses. As already stated at n.4, Armatori encouraged the filing of claims with such insurers (indeed the typical policy requires prompt assertion of claims, or recovery will be barred).

If an insurer, having made payment to a passenger, then joined in the passenger's settlement with Armatori, the analysis in the preceding section of this opinion applies to the settlement. In this section we deal only with instances in which a passenger received a payment from his or her insurer and then obtained added funds from Armatori, delivering a complete release in return. Such instances in turn pose two possibilities:

(1) After making payment to its insured, the insurer has obtained a payment from Armatori, itself releasing Armatori

---

have settled their claims with Costa Line and/or Costa Armatori *since there would not appear to be any point in sending them Notice of the Action.*
On December 10 Cadas' counsel approved the form of letter to passengers to accompany the class action notice, explaining their right to opt out by settling within 90 days or, failing that, binding them as members of the class. Then on January 21 Cadas' counsel wrote Costas' counsel (emphasis added):

Pursuant to our conversation, it is my understanding that your clients will pay for ½ of both the cost of printing the envelope and the postage necessary to send *to those passengers that have not settled their claims* both the Notice of Class Action and Transport Mutual's letter pertaining to settlement negotiations.
This course of conduct can be read only as a confirmation that the class did *not* encompass any passenger with whom Armatori had settled.

from any subrogation claim the insurer had because of paying the insured's claim.

(2) For whatever reason, the insurer has not pursued Armatori, so that Armatori has a full release from its passenger though *it* has not paid all the funds the satisfied passenger has received.

In the first example there is no conceivable justification for expanding the class by upsetting a fully consummated settlement. It is no different from the situation in which insured and insurer jointly negotiate a settlement, bringing into play all the considerations discussed earlier in this opinion.

■ As for the second possibility it must always be kept in mind that it is the *insurer's* (not the *insured's*) right of action that is sought to be protected. Any insurer that has made payment to its insured is subrogated pro tanto to its insured's claim—simply a fancy legalism for standing in its insured's shoes. If Armatori were unaware of such payment and exchanged funds for a release from the insured, it would be out of the matter entirely, for the insured (and hence the insurer as subrogee) could assert no claim against Armatori (though there might well be a dispute between insured and insurer because of the former's failure to protect the latter's subrogation rights).

If however Armatori *knew* of the insurer's interest when it later obtained a general release from a passenger, it might well be liable to the insurer. *Home Insurance Co. v. Hertz Corp.*, 71 Ill.2d 210, 16 Ill.Dec. 484, 375 N.E.2d 115 (1978) so holds under Illinois law. But that prospect does not support the avoidance of such settlements in the context of this class action:

(1) Any such claim is that of the *insurer* not the *passenger* (who is by definition

entirely satisfied, albeit from two sources).[12] Insurers are not within the certified class ("all individuals who were registered as passengers on the Angelina Lauro . . . ."). And they would *not* be claiming as subrogees (that is, in the shoes) of class members but in their *own* right because a duty to them had been violated by Armatori.

(2) There has been no showing that dissatisfied insurers (if any) satisfy the requirements for maintenance of a class action—for they would add entirely new issues to the litigation and should be tested separately in terms of class considerations. At the threshold the "numerosity" test of Rule 23(a)(1) has not been shown to be met, and the "typicality" standard of Rule 23(a)(3) is not satisfied by Cadas.

(3) Inclusion of insurers' claims in this action would proliferate the questions of both fact and law. It would become necessary to inquire into the facts surrounding every executed release where the insurer's claim had not been dealt with.[13] And although this is a derivative action that looks to Illinois law, the *substantive* law (as distinct from the Illinois choice-of-law rule, which necessarily applies) of insurer-subrogee claims against a settling tortfeasor would not necessarily be that of Illinois in every instance. *Home Insurance Co. v. Hertz Corp.* need not apply to the insurers, again widening the present bounds of the inquiry in this litigation.

If any insurer in fact has and wishes to assert a claim against Armatori—a claim quite different from the *merits* of this class action—it is free to do so outside the ambit of this action. No justification is found for

---

**12.** This conclusion is unaffected by *Wadsworth v. United States Postal Service*, 511 F.2d 64 (7th Cir. 1975), where the Court considered whether Rule 17(a), which requires that an insurer who has paid part of a plaintiff's loss be joined as a plaintiff, meant that *failure* to join the insurer limited the original plaintiff (the insured) to the amount the insurer had *not* paid. Because the Court found only a single claim in which both the subrogor (insured) and subrogee (insurer) had interests, it held the

insured could assert the *entire* claim on behalf of both. But where the insured has been fully paid the sole claim is that of the insurer, the *only* "real party in interest" under Rule 17(a).

**13.** If such inquiries were few in number the "numerosity" criterion would not have been satisfied. If they were many, the scope of the issues in the litigation would have been expanded impermissibly in relation to the issues affecting the already-certified class.

a redefinition of the plaintiff class to embrace what are really *two* sets of plaintiffs (speculative as to the existence of the second set, at that). Settlements by passengers will not be reopened because of possible direct claims by their insurers against Armatori.

### Conclusion

Defendants' motion to dismiss all passengers who have settled with Armatori is granted. Under all the circumstances discussed in this opinion, this Court finds no justification for the effort to reinstate the claims of such passengers and their insurers, or to inject insurers' claims into this litigation—save the prospect that an enlarged class and an enlarged claim pool might generate a larger allowance of attorneys' fees. As and when that issue comes before the Court, *both* sets of counsel—Cadas' and Costas'—are directed to separate out and file with the Court an itemized statement of the time devoted to the current cross-motions, together with the applicable (or claimed) hourly rate.[14]

---

**14.** If Costas' counsel are paid on other than a time basis, that information should be included as well.