**McPHERSON'S LTD., et al., Plaintiffs,**

v.

**WILKINSON SWORD, INC. and Allegheny International, Inc., Defendants.**

No. 86 C 2176.

United States District Court, N.D. Illinois, E.D.

Jan. 26, 1987.

Daniel I. Schlessinger, Lord, Bissell & Brook, Chicago, Ill., for plaintiffs.

John F. McClure, Richard L. Rosen, Arnstein, Gluck, Lehr & Milligan, Chicago, Ill., James D. Morton, Paul D. Kruper, Buchanan Ingersoll, P.C., Pittsburgh, Pa., for defendants.

MEMORANDUM OPINION
AND ORDER

SHADUR, District Judge.

Plaintiffs' suit against Wilkinson Sword, Inc. ("Wilkinson") and Allegheny International, Inc. ("Allegheny"), with jurisdiction grounded in the Lanham Act (15 U.S.C. §§ 1051–1127), has wended its way through a preliminary injunction evidentiary hearing and substantial post-hearing procedures. Allegheny now moves (1) to vacate in part the April 3, 1986 preliminary injunction order (the "Order"), (2) to vacate this Court's September 2, 1986 ruling finding Allegheny in civil contempt for violating

that Order and (3) to strike plaintiffs' motion for sanctions against Allegheny pursuant to that contempt ruling. For the reasons stated in this memorandum opinion and order, Allegheny's motions are granted in their entirety.

## Procedural History

After an evidentiary hearing this Court issued the Order restraining Allegheny and Wilkinson from engaging in certain activities. By its terms the Order applied to all such prohibited activities without any express geographical limitation.[1] On Allegheny's representation—later proved false—that it was really not a proper party to the dispute, this Court (without objection on plaintiffs' part) granted a motion to dismiss Allegheny as a defendant April 30, 1986.

Allegheny nonetheless proceeded to violate the Order by engaging in Order-prohibited activities in Canada.[2] Plaintiffs filed a motion for a rule to show cause why Allegheny should not be held in contempt for those violations. After still another evidentiary hearing this Court held Allegheny in civil contempt September 2, 1986 and ordered sanctions imposed on Allegheny to compensate plaintiffs for their damages caused by Allegheny's contempt (642 F.Supp. at 1056).[3]

Shortly after the contempt citation, Allegheny moved to dismiss plaintiffs' complaint to the extent it challenged Allegheny's marketing activities in Canada. Allegheny argued such activities were beyond the subject matter jurisdiction of this Court—an issue never raised in the earlier proceedings.[4] After applying the test developed in *Timberlane Lumber Co. v. Bank of America National Trust & Savings Association*, 549 F.2d 597, 613 (9th Cir.1976) to Allegheny's Canadian marketing activities (as that test bore on the facts that had emerged only after the Order was issued), this Court determined the Lanham Act did not confer subject matter jurisdiction over those Canadian activities. Accordingly, the portion of the Complaint that challenged such Canadian activities was dismissed December 8, 1986.

## Effect on the Order

■ Because the now-fully-developed facts disclose this Court does not have jurisdiction over Allegheny's Canadian marketing activities, it also does not have jurisdiction to enjoin Allegheny from pursuing those activities. Accordingly the Order must be, and is, vacated to the extent its language (though framed in terms of conduct, and not in geographical terms) embraces those activities (*Latrobe Steel Co. v. United Steel Workers of America, AFL–*

1. Wilkinson was the actual contracting party under the agreement pursuant to which Wilkinson and another Allegheny subsidiary (Wilkinson Sword Canada, Inc. ["Wilkinson Canada"]) purchased the trademarked goods from plaintiffs. That agreement included all of North America (and hence Canada) as the territory for which Wilkinson was designated plaintiffs' sole distributor. Allegheny chose—as a purely internal matter—to use different subsidiaries to make the purchases under the agreement: Wilkinson for United States purchases, Wilkinson Canada for Canadian purchases.

2. As this Court later held, because Allegheny was acting in active concert with Wilkinson, Allegheny remained bound by the Order in all events, notwithstanding its having been dismissed as a named defendant (642 F.Supp. 1049, 1059 (1986)). That obviated any need to decide whether the Order, which had never been amended to delete Allegheny as a party to its terms, had been so modified as a matter of law

by Allegheny's dismissal as a defendant. In any case, plaintiffs have since amended their Complaint by rejoining Allegheny as a defendant.

3. Only Allegheny was held in contempt because Wilkinson is a wholly-owned subsidiary of Allegheny, not directly involved in the Order-violative activities in Canada. It was Allegheny that (1) had made the decision to violate the Order, (2) had implemented that decision by causing Wilkinson Canada to engage in the prohibited conduct and (3) had the capacity to prevent future violations.

4. It is never untimely, of course, to raise subject matter jurisdiction. All the same, the late emergence of the issue has now made it impossible to determine whether some jurisdictional handle might have existed for dealing with Allegheny's conduct in the first instance, had it not misrepresented the facts as to the existing inventory in Canada.

*CIO*, 545 F.2d 1336, 1342 (3d Cir.1976)). True enough (as plaintiffs urge), this Court had jurisdiction over such Canadian activities at least while it was determining the scope of its own jurisdiction. That in turn meant it could also have issued orders to preserve the status quo while making that determination (*United States v. United Mine Workers*, 330 U.S. 258, 293, 67 S.Ct. 677, 695–96, 91 L.Ed. 884 (1947)). But such jurisdiction-to-determine-jurisdiction principles cannot affect the current decision that jurisdiction is partially lacking, that the Order is consequently void in part and that it must therefore be partially vacated now.

Nor can this Court accept plaintiffs' invitation to invoke ancillary jurisdiction as a basis for coverage of Allegheny's Canadian activities. That murky area is dealt with at considerable length in 13 Wright, Miller & Cooper, *Federal Practice and Procedure: Jurisdiction 2d* § 3523 (1984). Suffice it to say that although plaintiffs' *rights* may grow out of contract violations, this Court's *jurisdiction* does not. Absent the Lanham Act, Wilkinson's breaches of contract could not have been tried in this Court against Allegheny (diversity of citizenship being lacking). And the Lanham Act could not and does not regulate commercial activities, such as those of Allegheny in Canada, that do not have the requisite effect on United States interstate or foreign commerce. It would plainly be an impermissible stretch of ancillary jurisdiction notions were this Court to reach out to control conduct that Congress itself cannot regulate.

It is however possible (though this question need not be decided for reasons discussed in the next section of this opinion) that this Court's power over Allegheny and its Canadian activities might have been claimed on a pendent jurisdiction theory. Though pendent *party* jurisdiction is certainly not a darling of the federal judiciary (see, e.g., *Aldinger v. Howard*, 427 U.S. 1, 96 S.Ct. 2413, 49 L.Ed.2d 276 (1976)), there

remains room for its operation in appropriate circumstances (see the discussion in *Bernstein v. Lind-Waldock & Co.*, 738 F.2d 179, 187–88 (7th Cir.1984)). But the short answer here is that pendent-party jurisdiction was *not* advanced as plaintiffs' predicate for asserting this Court's power over Allegheny—or, a fortiori, for issuance of the Order to the extent it impacted on Allegheny's Canadian activities. That fact bears on the propriety of imposing civil contempt sanctions on Allegheny for violating the Order, a subject dealt with in the following section.

### Civil Contempt

█ Allegheny's citation for civil contempt cannot survive the voiding of the part of the Order that was the basis for the asserted contempt. *United Mine Workers*, 330 U.S. at 295, 67 S.Ct. at 696–97; *Blocksom and Co. v. Marshall*, 582 F.2d 1122, 1124 (7th Cir.1978). That is so even if it were assumed this Court had jurisdiction to issue the Order when it did so, and even though Allegheny—instead of taking advantage of its opportunity to appeal the Order—violated a then-outstanding order of this Court.

Such a result is compelled by the nature of civil contempt, which is designed to benefit the complainant by compensating it for any harm caused by violations of a court's order or by coercing the recalcitrant party to obey the order. As *United Mine Workers*, 330 U.S. at 295, 67 S.Ct. at 696 (citations omitted) put it:

> The right to remedial relief falls with an injunction which events prove was erroneously issued, ... and *a fortiori* when the injunction or restraining order was beyond the jurisdiction of the court.

That principle should be contrasted with a citation for criminal contempt, which (being designed to vindicate a court's authority) would survive the avoidance of the underlying injunction (*id.* at 294, 67 S.Ct. at 696).[5] Disobedience of a court's order is not ex-

---

**5.** Had the Order been unappealable, even a criminal contempt might also fall along with the underlying order, see *Marrese v. American Academy of Orthopaedic Surgeons*, 726 F.2d 1150, 1157 (7th Cir.1984).

cused by a later determination that the order should never have issued. With the rarest of exceptions,[6] orders must be obeyed until they expire or are set aside by appropriate judicial proceedings (*id.*).

Plaintiffs do not seek vindication of this Court's authority, with the price for having flouted the Order payable to the Clerk as a sanction. On the contrary, though this Court's authority to issue and enforce orders was indirectly vindicated by Allegheny's civil contempt citation, plaintiffs were the intended direct beneficiaries of that finding. As *Latrobe Steel*, 545 F.2d at 1346 (footnote omitted) put it:

> The *United Mine Workers'* doctrine thus recognizes that a private party should not profit as a result of an order to which a court determines, in retrospect, [it] was never entitled.

Nor is a different result called for by *Bethlehem Mines Corp. v. United Mine Workers of America*, 476 F.2d 860 (3d Cir.1973), on which plaintiffs seek to rely. There the defendant found in civil contempt was not allowed to attack the underlying injunction because it had appealed only the civil contempt judgment, not the underlying injunction. Because the injunction was still valid, so was the civil contempt (*id.* at 866–67). Any language in *Bethlehem Mines* suggesting that the result would be the same even had the preliminary injunction been void is simply dictum, directly contradicted by the Supreme Court's *United Mine Workers* holding.

Indeed the selfsame Third Circuit in *Latrobe Steel*, 545 F.2d at 1342 (citing the Supreme Court's *United Mine Workers* decision) says precisely the opposite of the *Bethlehem Mines* dictum, undercutting any precedential value of that dictum even in the Third Circuit. And *Blocksom*, 582 F.2d at 1124 strongly indicates the *Bethlehem Mines* dictum would have no force in this Circuit in any event. In sum, plaintiffs can draw little if any comfort from *Bethlehem Mines*.

■ To be sure, Allegheny did not appeal the Order (though *Blocksom* suggests such an appeal was not a prerequisite to its current motion). But in any event Allegheny has now successfully moved to vacate the part of the Order that covers its Canadian activities, because federal jurisdiction over those activities was lacking from the outset (though the absence of such jurisdiction was not demonstrated until after the Order was issued). Because jurisdictional defects can be raised at any time (see n. 4), Allegheny's belated raising of the issue does not bar it from moving now for a partial vacation of the Order and for a total vacation of the related civil contempt.

Just a few words are in order to deal with the pendent-party question raised at the end of the preceding section. It may be, as there suggested, that plaintiffs could have come into court in the first instance, asking relief in the Complaint (and obtaining relief in the Order) against Allegheny as a pendent party. Had that concept been advanced at the outset, the Order might even have survived, or at least a better argument might have been made for holding Allegheny to have acted at its peril in violating the Order. But where no such basis for the Order was asserted when it was entered, a party such as Allegheny—confident of the Order's jurisdictional infirmity, of its being void rather than merely voidable—cannot fairly be held to civil contempt liability on a post hoc rationalization.

### Conclusion

Based on the facts that have been presented to this Court since entry of the Order, it has always lacked subject matter jurisdiction over Allegheny's marketing activities in Canada. Accordingly the part of the Order that may be read as enjoining such activities is now vacated. Because Allegheny was held in civil contempt solely because of such Canadian activities, that holding must also be vacated: Its underlying basis is now gone. Plaintiffs' motion

---

6. See *In re Providence Journal Co.*, 809 F.2d 63 (1st Cir.1986); *Cooper v. Rockford Newspapers, Inc.*, 50 Ill.App.3d 250, 8 Ill.Dec. 508, 365 N.E.2d 746 (2d Dist.1977).

for sanctions because of such civil contempt must be, and is, denied.