THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. SEQUOIA BOOKS, INC., *et al.*, Defendants-Appellants.
Second District   Nos. 2—87—0074, 2—87—0157 cons.

Opinion filed January 19, 1988.

Reno, O'Byrne & Kepley, P.C., of Champaign (J. Steven Beckett, of counsel), for appellant Sequoia Books, Inc.

Daniel J. Cain, of Sreenan & Cain, P.C., of Rockford, for appellants Bruce Riemenschneider and Cathy Riemenschneider.

Dallas C. Ingemunson, State's Attorney, of Yorkville (William L. Browers and Marshall M. Stevens, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE WOODWARD delivered the opinion of the court:

Defendants, Sequoia Books, Inc. (Sequoia), and Bruce and Cathy Riemenschneider (Riemenschneiders), appeal from a permanent injunction issued by the circuit court of Kendall County which restrained them from using a building commonly known as "Denmark II" for one year.

On January 7, 1986, the Kendall County State's Attorney filed a complaint for injunction directed against Sequoia and Riemensch-

neiders under the new authority of section 37—1 of the Criminal Code of 1961 (Code) (Ill. Rev. Stat. 1985, ch. 38, par. 37—1 *et seq.*). The complaint asserted, in substance, that Sequoia operated the Denmark II Bookstore at a location on U.S. Route 30, in Kendall County, which was owned by Riemenschneiders, from which location Sequoia disseminated sexually explicit items which were obscene. The complaint further contended that Sequoia and its employees continued to sell materials, including magazines, despite criminal convictions for obscenity and jury determinations that magazines sold at the store were obscene. Accordingly, the State prayed that the business location be declared a public nuisance and that the trial court issue preliminary and permanent injunctions closing the building.

Sequoia responded with a motion to dismiss which, *inter alia,* contended that the amended statute was unconstitutional on its face because it permitted the imposition of an invalid prior restraint on future speech and because it did not contain the procedural safeguards of a system of prior restraint. At an initial hearing on the complaint, the trial court denied the motion to dismiss and indicated its belief that the Code was constitutional.

At the February 19, 1986, hearing and at a subsequent hearing held August 29, 1986, the trial court, by the testimony of witnesses and through judicial notice, heard a body of factual evidence about the ownership and operation of the Denmark II Bookstore. Since 1982 the location has been owned by the Riemenschneiders, who lease it to Sequoia for the operation of the bookstore. Sequoia operates an adult bookstore on the business premises which offers for sale sexually explicit magazines.

From 1982 to 1985, 40 criminal cases had been filed by the Kendall County State's Attorney against Sequoia or its employees, charging violation of the obscenity statute with respect to approximately 1,500 magazines. Twenty-six of those cases were dismissed by agreement based on a policy of the State's Attorney to not prosecute clerks who left the employment of the store. Three cases against clerks resulted in directed verdicts in the defendant's favor on the basis of failure of proof on the issue of *scienter*. Two cases were jury verdicts of not guilty in favor of defendants who were clerks, and one jury verdict of not guilty was returned in favor of Sequoia. Two hundred thirty-three magazines had been charged in these cases. One jury verdict of guilty was returned against a defendant-clerk, and seven jury verdicts of guilty were returned against the corporate defendant. In those cases, 165 magazines were determined by the jury to be obscene, 40 magazines were determined to be not obscene, and no jury

determination was obtained as to 255 magazines because they were withdrawn from consideration by the filing of amended charges.

In 1986 the Kendall County State's Attorney commenced four criminal actions against Sequoia and secured jury verdicts of guilty in each of the cases. Those verdicts included jury findings that 558 magazines were obscene and 13 magazines were not obscene.

On March 12, 1986, the trial court issued a preliminary injunction against Sequoia. The order was reduced to writing on March 14, 1986, and stated in part:

"[T]his Court hereby enjoins the defendant, Sequoia Books, Inc., its agents, employees and assigns from maintaining the public nuisance *** and further expressly enjoins the defendant, Sequoia Books, Inc., its agents employees and assigns from exhibiting, selling or offering for sale materials in violation of Chapter 38, Section 11—20 Illinois Revised Statutes."

An attempted interlocutory appeal of this order was dismissed by this court on May 1, 1986, as being improperly perfected.

On July 25, 1986, the Kendall County State's Attorney filed a petition for rule to show cause against Sequoia alleging violation of the preliminary injunction order for the sale or offer of sale of obscene magazines on March 27 and 28, 1986, and May 9 and 29, 1986. Sequoia filed written objections in response on August 29, 1986, and contended that the preliminary injunction order was unconstitutional and the procedure being utilized imposed an invalid prior restraint.

On August 29, 1986, a hearing on the request for a permanent injunction was held. On January 7, 1987, the trial court orally pronounced its ruling that it would grant injunctive relief and order the building closed, but would stay the closure upon the posting of a bond:

"I think that the injunction would be that they are enjoined from selling obscene magazines on the premises and that the premises should be closed for six months unless Sequoia or—and Riemenschneider give a bond that obscene magazines are not going to be sold from the premises and if they are, then they will—then judgment will be entered against them for that amount."

On January 21, 1987, the trial court entered a written order which enjoined Sequoia from maintaining a public nuisance in the Denmark II Bookstore location and expressly enjoined the exhibition, sale, or offer of sale of obscene materials from the premises. The written order also enjoined both Sequoia and Riemenschneiders from using the business premises for one year, provided that upon posting

a bond in the amount of $5,000 and further conditioned upon no violation of offenses specified in section 37—1 of the Code, the building could be used.

Also on January 21, 1987, the trial court found that Sequoia had violated the preliminary injunction order of March 14, 1986, for the sale and offer of sale of magazines on May 9 and May 29, 1986. Finding Sequoia in contempt, the trial court imposed a fine of $500.

Sequoia posted the $5,000 bond as required by the January 21, 1987, order. While this appeal was pending, the People moved to revoke the bond and vacate any stay of enforcement of the trial court's January 21, 1987, order. This court remanded for a factual hearing, which was held in the trial court on April 29, 1987, and on May 4, 1987, the trial court entered an order finding that on March 4 and 5, 1987, Sequoia had sold obscene magazines at the business premises and had, therefore, violated the conditions of the bond. On May 11, 1987, over the objections of Sequoia, this court entered an order revoking the appeal bond and dissolving the stay of the injunctive order. On May 29, 1987, the Illinois Supreme Court denied Sequoia's request for a supervisory order to impose a stay.

There are two issues before this court; namely, does the injunction which was entered pursuant to the Code constitute a prior restraint and, if so, whether the Code provides sufficient "procedural safeguards designed to obviate the dangers of a censorship system." (*Freedman v. Maryland* (1965), 380 U.S. 51, 58, 13 L. Ed. 2d 649, 654, 85 S. Ct. 734, 739.) For purposes of this appeal, we do not need to address the issue raised by Riemenschneiders.

The Code which is central to this case reads in pertinent part:

"Any building used in the commission of offenses prohibited by *** or used in the commission of an inchoate offense relative to any of the aforesaid principal offenses is a public nuisance." (Ill. Rev. Stat. 1985, ch. 38, par. 37—1.)

"Upon being satisfied by affidavits or other sworn evidence that an alleged public nuisance exists, the court may without notice or bond enter a temporary restraining order or preliminary injunction to enjoin any defendant from maintaining such nuisance and may enter an order restraining any defendant from removing or interfering with all property used in connection with the public nuisance. If during the proceedings and hearings upon the merits, *** the existence of the nuisance is established, and it is found that such nuisance was maintained with the intentional, knowing, reckless or negligent permission of the owner or the agent of the owner managing the building,

the court shall enter an order restraining all persons from maintaining or permitting such nuisance and from using the building for a period of one year thereafter ***." Ill. Rev. Stat. 1985, ch. 38, par. 37—4.

It is well established that prior restraint upon speech is antithetical to the first amendment. (*Near v. Minnesota ex rel. Olson* (1931), 283 U.S. 697, 75 L. Ed. 1357, 51 S. Ct. 625.) In *Near*, the court considered the validity of a Minnesota public nuisance statute. The statute defined as a public nuisance the possession or sale of an obscene or defamatory publication. The statute permitted injunctive relief against future publication and provided for abatement of the nuisance, along with criminal penalties. The defendant, who had been permanently enjoined from publishing his weekly newspaper, argued that the statute violated first amendment guarantees.

In analyzing the case before it, the *Near* court wrote as follows:

> "If we cut through mere details of procedure, the operation and effect of the statute in substance is that public authorities may bring the owner or publisher of a newspaper or periodical before a judge upon a charge of conducting a business of publishing scandalous and defamatory matter *** and unless the owner or publisher is able and disposed to bring competent evidence to satisfy the judge that the charges are true and are published with good motives and for justifiable ends, his newspaper or periodical is suppressed and further publication is made punishable as a contempt. This is of the essence of censorship." (*Near*, 283 U.S. at 713, 75 L. Ed. at 1366, 51 S. Ct. at 630.)

The court later noted the following:

> "The fact that the liberty of the press may be abused by miscreant purveyors of scandal does not make any the less necessary the immunity of the press from previous restraint in dealing with official misconduct. Subsequent punishment for such abuses as may exist is the appropriate remedy, consistent with constitutional privilege." *Near*, 283 U.S. at 720, 75 L. Ed. at 1369, 51 S. Ct. at 632.

In *Vance v. Universal Amusement Co.* (1980), 445 U.S. 308, 63 L. Ed. 2d 413, 100 S. Ct. 1156, the Supreme Court held that a Texas nuisance statute, when joined with a State rule of civil procedure, authorized prior restraints of indefinite duration on the exhibition of movies that have not been adjudicated to be obscene. The court found that an exhibitor would be required to obey such an order pending review of the merits and would be subjected to contempt proceedings

even if the movie was not found to be obscene. In the court's view, these prior restraints were more burdensome and objectionable than the threat of criminal penalties after the film has been shown. See also *Schad v. Borough of Mount Ephraim* (1981), 452 U.S. 61, 68 L. Ed. 2d 671, 101 S. Ct. 2176 (invalid to eliminate completely adult uses by application of a zoning ordinance); *Southeastern Promotions, Ltd. v. Conrad* (1975), 420 U.S. 546, 43 L. Ed. 2d 448, 95 S. Ct. 1239 (denial, suspension, or revocation of license unconstitutional).

There is little question that the order which enjoins the defendants from selling or exhibiting explicit material at the Denmark II Bookstore for one year acts as a prior restraint on its first amendment rights. On the basis of past violations, the court enjoined defendants from future sales of sexually explicit materials whether or not they were actually obscene. This is prior restraint in one of its purest forms.

The State argues that *Arcara v. Cloud Books, Inc.* (1986), 478 U.S. 697, 92 L. Ed. 2d 568, 106 S. Ct. 3172, is dispositive in this case. In *Arcara,* the Supreme Court upheld the constitutionality of a New York statute which authorized the closure of a building found to be a public health hazard for up to one year. The complaint was based on proof of illegal sexual acts and solicitation for prostitution being conducted on the premises. The defendant bookstore asserted a prior restraint argument which the court rejected because illicit sexual *conduct* rather than *protected speech* was being enjoined.

Justice O'Connor, in a concurring opinion, explicated the distinction made by the court:

"If, however, a city were to use a nuisance statute as a pretext for closing down a book store because it sold indecent books or because of the perceived secondary effects of having a purveyor of such books in the neighborhood, the case would clearly implicate First Amendment concerns and require analysis under the appropriate First Amendment standard of review." *Arcara,* 478 U.S. at 708, 92 L. Ed. 2d at 579, 106 S. Ct. at 3178 (O'Connor, J., concurring).

It is obvious that the facts of *Arcara* distinguish it from the present case. Here we are not dealing with illegal sexual conduct but rather speech, which is presumptively protected. The New York statute regulated conduct that posed public health problems. The Illinois statute, as applied here, is aimed at proscribing the sale and exhibition of allegedly obscene materials.

The State also argues that the propriety of the permanent injunction against the defendant's use of the building is supported by Illi-

nois case law. We do not agree. None of the cases cited by the State deal conclusively with a permanent injunction entered against an adult bookstore solely for the sale of allegedly obscene materials. In *People v. Sequoia Books, Inc.* (1986), 149 Ill. App. 3d 383, the State filed a two-count complaint pursuant to section 1 *et seq.* of "An Act regarding places used for purposes of lewdness, assignation, or prostitution, to declare the same to be public nuisances, and to provide for the more effectual suppression thereof" (Ill. Rev. Stat. 1981, ch. 100½, par. 1 *et seq.*). Count I sought to enjoin defendants from the exhibition and sale of allegedly obscene materials and was premised upon said statute despite the fact that it could not be used to abate obscenity. (*People ex rel. Carey v. Starview Drive-In Theater* (1981), 100 Ill. App. 3d 624.) Count II sought to enjoin defendants from operating the Denmark Bookstore for one year because defendants allegedly permitted fellatio to occur within the business premises. This case is not on point.

The State further cites the following language in *Sequoia Books, Inc.* as support for the permanent injunction:

"We note, however, that freedom 'of speech and press from prior restraint is not absolutely unlimited. [Citations.] There are legitimate State interests at stake in 'stemming the tide of commercialized obscenity' including the interest of the public in the quality of life, the total community environment, the tone of commerce in city centers, and perhaps public safety itself. [Citation.]" *Sequoia Books, Inc.*, 149 Ill. App. 3d at 387-88.

This simply reiterates the long-established doctrine regarding restraint of speech and provides no new guidance for this court. In *Kingsley Books, Inc. v. Brown* (1957), 354 U.S. 436, 1 L. Ed. 2d 1469, 77 S. Ct. 1325, the court approved a system of prior restraint against *named publications.* This excerpt from *Sequoia Books, Inc.* reflects the well-established idea that prior restraints on speech are not unconstitutional *per se. Bantam Books, Inc. v. Sullivan* (1963), 372 U.S. 58, 9 L. Ed. 2d 584, 83 S. Ct. 631.

Regarding the second issue argued by defendants, prior restraints are not *per se* unconstitutional. (*Bantam Books*, 372 U.S. at 70, 9 L. Ed. 2d at 593, 83 S. Ct. at 639.) Nevertheless, any system of prior restraint "comes to this court bearing a heavy presumption against its constitutional validity." (*Bantam*, 372 U.S. at 70, 9 L. Ed. 2d at 593, 83 S. Ct. at 639.) A system of prior restraint can be found constitutional only if it provides adequate procedural safeguards. *Freedman v. Maryland* (1965), 380 U.S. 51, 58-60, 13 L. Ed. 2d 649, 654-55, 85 S. Ct. 734, 739-40.

"[A] system of prior restraint runs afoul of the First Amendment if it lacks certain safeguards: *First*, the burden of instituting judicial proceedings, and of proving that the material is unprotected, must rest on the censor. *Second*, any restraint prior to judicial review can be imposed only for a specified brief period and only for the purpose of preserving the status quo. *Third*, a prompt final judicial determination must be assured." *Southeastern Promotions, Ltd.*, 420 U.S. at 560, 43 L. Ed. 2d at 460, 95 S. Ct. at 1247.

The court's basis for imposition of procedural safeguards is that "[t]he separation of legitimate from illegitimate speech calls for *** sensitive tools." *Speiser v. Randall* (1958), 357 U.S. 513, 525, 2 L. Ed. 2d 1460, 1472, 78 S. Ct. 1332, 1342.

■■ The Code is not the "sensitive tool" prescribed by the Supreme Court. It is procedurally deficient in terms of the test put forward in *Freedman*. Specifically, the Code does not define the length of the period during which an alleged nuisance can be restrained prior to full judicial review. Also, it makes no provision for the prompt final determination of the matter. Absent these clearly defined procedural safeguards, the Code cannot support a system of prior restraint.

Further, in *Vance v. Universal Amusement Co.* (1980), 445 U.S. 308, 63 L. Ed. 2d 413, 100 S. Ct. 1156, the disputed Texas nuisance statute read as follows:

" 'Whenever the Attorney General, or the district or county attorney has reliable information that such a nuisance exists, either of them shall file suit in the name of this State in the county where the nuisance is alleged to exist against whoever maintains such nuisance to abate and enjoin the same. If judgment be in favor of the State, then judgment shall be rendered abating said nuisance and enjoining the defendants from maintaining the same, and ordering that said house be closed for one year from the date of said judgment, unless the defendants in said suit, or the owner, tenant or lessee of said property make bond payable to the State at the county seat of the county where such nuisance is alleged to exist, in the penal sum of not less than one thousand nor more than five thousand dollars, with sufficient sureties to be approved by the judge trying the case, conditioned that the acts prohibited in this law shall not be done or permitted to be done in said house. On violation of any condition of such bond, the whole sum may be recovered as a penalty in the name and for the State in the county where such conditions are violated, all such suits to be

brought by the district or county attorney of such county.'"
*Vance*, 445 U.S. at 310 n.1, 63 L. Ed. 2d at 416 n.1, 100 S. Ct.
at 1158 n.1, quoting Tex. Rev. Civ. Stat. Ann., art. 4666
(Vernon 1952).

The defendant operated an indoor adults-only motion picture the-
ater. The landlord gave defendant notice that the theater's lease
would be terminated. The county attorney had informed the landlord
that he would be attempting to enjoin the tenants from showing alleg-
edly obscene movies. Defendant filed suit to obtain injunctive and de-
claratory relief to prevent any action under the Texas nuisance suit.

In analyzing the applicable standard of review, the Supreme Court
noted that the court of appeals had correctly found that the regula-
tion of communication such as the exhibition of motion pictures must
utilize more narrowly drawn procedures than is required by the abate-
ment of ordinary nuisance and that the State's burden when attempt-
ing to enjoin future exhibitions of said materials is heavier than the
burden of supporting a criminal sanction for a past communication.

The court found that the Texas statute authorized prior restraints
of indefinite duration on the exhibition of motion pictures that had
not been adjudged obscene. The court then stated as follows:

"Presumably, an exhibitor would be required to obey such an
order pending review of its merits and would be subject to con-
tempt proceedings even if the film is ultimately found to be
nonobscene. Such prior restraints would be more onerous and
more objectionable than the threat of criminal sanctions after a
film has been exhibited, since nonobscenity would be a defense
to any criminal prosecution." *Vance*, 445 U.S. at 316, 63 L. Ed.
2d at 421, 100 S. Ct. at 1161-62.

*Vance* is sufficiently similar to the instant case both in terms of
the facts and the relevant nuisance statute to be controlling here. The
Code, specifically section 37—4, suffers from the same procedural de-
ficiencies found in the Texas statute that was declared an unconstitu-
tional prior restraint on speech. Under the Code, the State can *ex
parte* move the court to enter a temporary restraining order or pre-
liminary injunction. The court can, upon being satisfied by affidavits
or other sworn evidence, *without notice or bond* enter a temporary re-
straining order or preliminary injunction to enjoin the alleged nui-
sance. Presumably, the defendant must obey the order pending review
of its merits or face contempt proceedings.

In *Vance* the court found these procedures to lack sufficient safe-
guards to pass constitutional muster. In the instant case, the proce-
dural elements of section 37—4 of the Code are constitutionally defi-

cient in safeguarding presumptively protected speech. The procedures authorize prior restraints that are more onerous than is permissible under the appropriate standard of review.

The State again argues that *Arcara v. Cloud Books, Inc.* (1986), 478 U.S. 697, 92 L. Ed. 2d 568, 106 S. Ct. 3172, is dispositive regarding the issue of procedural safeguards. As noted above, *Arcara* deals with an alleged public health hazard rather than protected speech. As such, it is clearly distinguishable.

For the foregoing reasons, we hold that the Code (Ill. Rev. Stat. 1985, ch. 38, par. 37—1 *et seq.*) is unconstitutional in its application to adult bookstores that sell sexually explicit materials; therefore, we reverse the injunctive orders issued by the circuit court of Kendall County.

Reversed.

NASH and REINHARD, JJ., concur.