THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. SEQUOIA BOOKS, INC., Defendant-Appellant.

Second District No. 2—87—0675

Opinion filed July 21, 1988.—Rehearing denied August 22, 1988.

628

Michael J. Zopf and Glenn A. Stanko, both of Reno, O'Byrne & Kepley, P.C., and Beckett & Crewell, both of Champaign (J. Steven Beckett, of counsel), for appellant.

Dallas C. Ingemunson, State's Attorney, of Yorkville (William L. Browers and Marshall M. Stevens, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE INGLIS delivered the opinion of the court:

This is an appeal from a jury verdict finding defendant in violation of a permanent injunction which enjoined defendant, Sequoia Books, Inc., from, among other things, violating section 11—20 of the Criminal Code of 1961 (Ill. Rev. Stat. 1985, ch. 38, par. 11—20). We affirm.

On appeal, defendant contends (1) that the finding of contempt cannot stand due to the fact that the injunction on which it was based was reversed as a prior restraint; (2) that a statement by an expert witness that the two magazines at issue promoted AIDS was reversible error; (3) that it was reversible error for the trial court to *sua sponte* state that "the corporation is responsible for acts of its agents"; and (4) that the imposition of a $10,000 fine was an abuse of discretion.

On January 21, 1987, an injunction was entered against defendant and Bruce and Cathy Riemenschneider which provided:

"1. That this Court hereby enjoins the defendant, Sequoia Books, Inc., its agents, employees and assigns, from maintaining the public nuisance as described in the findings hereinabove and further expressly enjoins the defendant, Sequoia Books,

Inc., its agents, employees and assigns from exhibiting, selling or offering for sale material in the premises described above in violation of Chapter 38, §11—20 Illinois Revised Statutes.

2. That the defendants, Sequoia Books, Inc., Bruce and Cathy Riemenschneider are restrained from maintaining or permitting such nuisance and from using the building described hereinabove for a period of one (1) year hereafter providing that upon the defendants giving Bond to the Clerk of this Court to be approved by this Court in an amount of $5000.00 payable to the People of the State of Illinois and including a condition that no offense specified in §37—1 of Chapter 38, Illinois Revised Statutes, shall be committed at, in or upon the property described and that the principal obligor and surety assume responsibility for any fine, costs or damages resulting from such an offense hereafter that then and upon the filing of said Bond the defendants may use the building as described."

The proceedings leading up to this injunction are more fully described in *People v. Sequoia Books, Inc.* (1988), 165 Ill. App. 3d 143.

Defendant posted the $5,000 bond as required by the January 21, 1987, order. The State later moved to revoke the bond and vacate any stay of enforcement of the trial court's January 21, 1987, order. This court remanded for a factual hearing (which was held in the trial court on April 29, 1987), and on May 4, 1987, Judge Burnell entered an order finding that on March 4 and 5, 1987, Sequoia had sold obscene magazines at the business premises and had therefore violated the conditions of the bond. On May 11, 1987, over the objections of defendant, this court entered an order revoking the appeal bond and dissolving the stay of the injunctive order. On May 29, 1987, the Illinois Supreme Court denied defendant's request for a supervisory order to impose a stay.

On May 26, 1987, a rule to show cause was filed charging defendant and the Riemenschneiders with contempt of court on the basis of the magazines purchased by Robert Wenman.

On June 15 and 16, 1987, a jury trial was held to determine if the injunctive order had been violated. We note here that, although the rule to show cause was filed against both defendant and the Riemenschneiders, it appears from the record that the State only proceeded against defendant at trial and a judgment of contempt was entered only against defendant. At trial, Robert Wenman, Jr., a deputy for the Kendall County sheriff's office, testified that on May 11, 1987, he entered the Denmark Bookstore. He purchased two magazines, Leather Sleaze and Hard Leather.

Deputy Wenman testified as to the magazines he purchased on May 11. He identified the two magazines which were purchased from the bookstore, the magazines were admitted into evidence and shown to the jury over defendant's objection about the constitutionality of the court's underlying injunctive order.

The next witness for the State was Dr. Michael Chiappetta, a registered psychologist and certified social worker practicing in Elgin, Illinois. Dr. Chiappetta testified that he was a treating psychologist. He testified that in his opinion the word prurient meant "that which appeals to the morbid, the disturbed, the sick, the pathological aspects of it." He was asked by the State if he had an opinion based upon a reasonable degree of psychological certainty, as to whether or not a reasonable person would find these magazines have any serious scientific value, and he replied yes. He was asked by the State, over objection, whether the materials had any educational value and he replied, "It would have absolutely no scientific value, and in my clinical opinion, would in fact give harmful educational input." The last question the prosecutor asked was as follows:

"Q. To a reasonable degree of psychological certainty, do you have any other concern about material depicted in those magazines?

A. Yes, I do.

MR. ZOPF: I object. There is no reasonable degree of psychological certainty.

THE COURT: Overruled.

BY MS. FLETCHER: What would that be?

A. That, they, the materials, what's presented here, tends to promote AIDS.

MS. FLETCHER: I have no further questions.

MR. ZOPF: Judge, I'm going to object. I ask to approach the bench.

THE COURT: We better get this in chambers so we can make a record of it."

In chambers a motion for a mistrial was made by defendant because of the immaterial nature of the comment by Dr. Chiappetta, the prejudicial impact on the jury, the speculative nature of the comment and the lack of any medical support for the doctor's opinion that the materials on trial promoted AIDS. The motion was denied by the court.

The next witness for the State was Alan Jiranek, a self-employed artist. He testified that the materials on trial had no artistic value.

The third witness, Jeanette Page, testified by way of stipulation,

that she was an English teacher at Thompson Junior High School. It was stipulated that she would testify that the materials on trial did not in her opinion have any serious literary value.

Over defendant's objection, the jury was given an excised copy of the injunctive order which was the subject of the allegation of contempt.

After the State rested, defendant presented no evidence. Defendant made a motion for a directed verdict asserting, *inter alia*, that the underlying order of the alleged contempt was unconstitutional as a prior restraint and that there was insufficient evidence of *scienter*. Those motions were denied. Closing arguments were then presented to the jury. During the argument of defense counsel an objection was made to the statement that the State had failed to prove a willful violation. The court sustained the objection and in its ruling stated that "[t]he corporation is responsible for the acts of his agent."

The jury returned a verdict of guilty of contempt. The court summarily fined defendant $10,000 plus costs.

In its motion for a new trial, defendant again asserted the unconstitutionality of the Illinois criminal public nuisance statute, section 37—1 (Ill. Rev. Stat. 1985, ch. 38, par. 37—1), that the court erred allowing the psychologist Michael Chiappetta to testify that the materials promoted AIDS, that the court erred in its ruling during defendant's closing argument that the State was not required to show *scienter*, and that the fine of $10,000 for two magazines was excessive. That motion for a new trial was denied.

I

In *People v. Sequoia Books, Inc.* (1988), 165 Ill. App. 3d 143, 153, this court held that section 37—1 of the Criminal Code of 1961 (Code) (Ill. Rev. Stat. 1985, ch. 38, par. 37—1) was unconstitutional in its application to adult bookstores that sell sexually explicit materials, and for that reason reversed the underlying injunction in the present case. The question now before this court is whether violation of that invalid injunction is grounds for contempt.

Defendant argues that a judgment of contempt cannot stand when based on an unconstitutional injunction. The State, on the other hand, argues that under *Walker v. City of Birmingham* (1967), 388 U.S. 307, 18 L. Ed. 2d 1210, 87 S. Ct. 1824, an injunction, even though unconstitutional, may be the basis for a finding of criminal contempt.

In *Walker*, petitioners had violated a court order enjoining them from encouraging mass street parades or mass processions without a permit as required by a Birmingham ordinance. (388 U.S. at 309, 18

L. Ed. 2d at 1213, 87 S. Ct. at 1826.) Without addressing the constitutionality of the injunction, the Court affirmed the fine which had been entered against petitioner. (388 U.S. at 321, 18 L. Ed. 2d at 1220, 87 S. Ct. at 1832.) In affirming, the Court quoted its earlier decision in *Howat v. Kansas* (1922), 258 U.S. 181, 66 L. Ed. 550, 42 S. Ct. 277:

> " 'An injunction duly issuing out of a court of general jurisdiction with equity powers upon pleadings properly invoking its action, and served upon persons made parties therein and within the jurisdiction, must be obeyed by them however erroneous the action of the court may be, even if the error be in the assumption of the validity of a seeming but void law going to the merits of the case. It is for the court of first instance to determine the question of the validity of the law, and until its decision is reversed for error by orderly review, either by itself or by a higher court, its orders based on its decision are to be respected, and disobedience of them is contempt of its lawful authority, to be punished.' " (*Walker*, 388 U.S. at 314, 18 L. Ed. 2d at 1216, 87 S. Ct. at 1828, quoting *Howat*, 258 U.S. at 189-90, 66 L. Ed. at 559, 42 S. Ct. at 280.)

The Court went on to state that "[w]hatever the limits of *Howat v. Kansas*, we cannot accept the petitioners' contentions in the circumstances of this case." 388 U.S. at 315, 18 L. Ed. 2d at 1216, 87 S. Ct. at 1829.

The court noted:

> "[T]his is not a case where the injunction was transparently invalid or had only a frivolous pretense to validity. We have consistently recognized the strong interest of state and local governments in regulating the use of their streets and other public places. [Citations.] *** As the Court stated, in *Cox v. Louisiana*, 'We emphatically reject the notion *** that the First and Fourteenth Amendments afford the same kind of freedom to those who would communicate ideas by conduct such as patrolling, marching, and picketing on streets and highways, as these amendments afford to those who communicate ideas by pure speech.' " 388 U.S. at 315-16, 18 L. Ed. 2d at 1217, 87 S. Ct. at 1829, quoting *Cox v. Louisiana* (1965), 379 U.S. 536, 555, 13 L. Ed. 2d 471, 484, 85 S. Ct. 453, 464.

In *Cooper v. Rockford Newspaper, Inc.* (1977), 50 Ill. App. 3d 250, this court reversed a judgment of contempt for violation of an injunction which enjoined a paper from editorializing about a libel suit in which the paper was involved. The court found that on balance, the

competing interests of a free press on the one hand and a fair trial and the integrity of the court on the other, the defendant should not be held responsible for violating the injunction. 50 Ill. App. 3d at 256-57.

In reaching its holding, this court looked to the Supreme Court's decision in *Maness v. Meyers* (1975), 419 U.S. 449, 461, 42 L. Ed. 2d 574, 584, 95 S. Ct. 584, 592, and the Court's recognition that "where the injury flowing from an error is irreparable and the constitutional right involved is one with 'ancient roots' strongly implanted in the adversary system, the violation may not be punishable by contempt if the order is proved invalid." 50 Ill. App. 3d at 254.

This court stated:

"[T]he heavy presumption against such prior restraints on pure speech must be heavily weighed and deprivation of strongly rooted first amendment rights deemed an irreparable injury, to be permitted, if at all, when the competing interests are overriding." 50 Ill. App. 3d at 256.

The court also stated that contempt was generally defined as conduct calculated to embarrass, hinder or obstruct a court. (50 Ill. App. 3d at 255.) The court found that there was no hindrance of the court in that case. (50 Ill. App. 3d at 255.) Finally, this court distinguished *Walker* because it did not involve a prior restraint on pure speech. 50 Ill. App. 3d at 257.

*In re Providence Journal Co.* (1st Cir. 1986), 820 F.2d 1342, *modified* (1987), 820 F.2d 1354, is also instructive on the issue before the court. In *Providence Journal*, the court stated that it was presented with the conflict between the first amendment principle that the press shall not be subjected to prior restraints and "the sine qua non of orderly government, that, until modified or vacated, a court order must be obeyed." 820 F.2d at 1344.

In *Providence Journal*, a temporary restraining order had been entered barring the Journal from publishing logs and memoranda that the FBI compiled from surveillance of an individual who was reputedly prominent in organized crime. (820 F.2d 1344-45.) The district court later vacated the order and denied a preliminary injunction. (820 F.2d at 1345.) However, prior to vacation of the order, the Journal published an article which contained information taken from the logs and memoranda. 820 F.2d at 1345.

After a hearing, the Journal was found guilty of criminal contempt. (820 F.2d at 1345.) The circuit court reversed the district court's contempt finding. (820 F.2d at 1353.) Like *Cooper, Providence Journal* distinguished *Walker*. (See 820 F.2d 1346-47.) The court

found that because the injunction in question enjoined pure speech, it was transparently invalid and therefore could not stand as the basis for a contempt citation. See 820 F.2d at 1353.

■ The import of *Walker* is that a contempt finding may stand even though it is based on an unconstitutional injunction. However, even *Walker* indicated that an injunction which was transparently void may not be grounds for a contempt finding. See *Walker*, 388 U.S. at 315, 18 L. Ed. 2d at 1217, 87 S. Ct. at 1829; *Providence Journal*, 820 F.2d at 1347.

■ Furthermore, this court's opinion in *Cooper* indicates that a court order which enjoins pure speech cannot be the basis for contempt. (See *Cooper*, 50 Ill. App. 3d at 257; see also *Providence Journal*, 820 F.2d at 1353.) Yet, at the same time, the necessity to protect the rightful power of the courts requires that if an order has any pretense to validity, it should be the basis for a contempt finding. (*Providence Journal*, 820 F.2d at 1347.) Thus, the determination of whether the injunction in the present case can support a contempt finding rests on whether the injunction was transparently invalid.

■ Prior restraints on speech and publication are the most serious and least tolerable infringement on first amendment rights. (*Nebraska Press Association v. Stuart* (1976), 427 U.S. 539, 559, 49 L. Ed. 2d 683, 697, 96 S. Ct. 2791, 2803.) However, not all restraints on publication amount to an impermissible infringement on first amendment rights. (See *Kingsley Books, Inc. v. Brown* (1957), 354 U.S. 436, 1 L. Ed. 2d 1469, 77 S. Ct. 1325.) "The phrase 'prior restraint' is not a self-wielding sword. Nor can it serve as a talismanic test." 354 U.S. at 441, 1 L. Ed. 2d at 1474, 77 S. Ct. at 1328; see also *Southeastern Promotions, Ltd. v. Conrad* (1975), 420 U.S. 546, 558, 43 L. Ed. 2d 448, 459, 95 S. Ct. 1239, 1246 (prior restraints are not unconstitutional *per se*).

■ We find that in the instant case, the contempt finding was valid because paragraph one of the injunction enjoined defendant from violating section 11—20 of the Code or, in other words, from distributing obscenity, and obscenity is not within the area of constitutionally protected speech or press (*Roth v. United States* (1957), 354 U.S. 476, 485, 1 L. Ed. 2d 1498, 1507, 77 S. Ct. 1304, 1309).

In *Near v. Minnesota ex rel. Olson* (1931), 283 U.S. 697, 706, 75 L. Ed. 1357, 1362, 51 S. Ct. 625, 627, the Court held unconstitutional an injunction which enjoined the defendants from " 'producing, editing, publishing, circulating, having in their possession, selling or giving away any publication whatsoever which is a malicious, scandalous or defamatory newspaper, as defined by law,' and also 'from further

conducting said nuisance under the name and title of said The Saturday Press or any other name or title.' " However in so holding the Court stated:

"The objection has also been made that the principle as to immunity from previous restraint is stated too broadly, if every such restraint is deemed to be prohibited. That is undoubtedly true; the protection even as to previous restraint is not absolutely unlimited. But the limitation has been recognized only in exceptional cases. 'When a nation is at war many things that might be said in time of peace are such a hindrance to its effort that their utterance will not be endured so long as men fight and that no Court could regard them as protected by any constitutional right.' [Citation.] No one would question but that a government might prevent actual obstruction to its recruiting service or the publication of the sailing dates of transports or the number and location of troops. *On similar grounds, the primary requirements of decency may be enforced against obscene publications.*" (Emphasis added.) (283 U.S. at 715-16, 75 L. Ed. at 1367, 51 S. Ct. at 631.)

Thus under *Near*, the Court was of the opinion that prior restraints against obscene publications were constitutionally valid.

This position was reenforced in *Kingsley*, where the Court found that an injunction against distribution of booklets already found to be obscene was constitutional. *Kingsley*, 354 U.S. 436, 1 L. Ed. 2d 1469, 77 S. Ct. 1325.

On the same day that the Court decided *Kingsley*, the Court decided *Roth v. United States* and its companion case *Alberts v. California* (1957), 354 U.S. 476, 1 L. Ed. 2d 1498, 77 S. Ct. 1304. In *Kingsley*, the Court compared the legal consequences presented in that case with those found in *Alberts*. The Court noted that in *Alberts* the defendant had been fined $500, sentenced to 60 days in prison, and put on probation for two years on the condition that he not violate the obscenity statute. (*Kingsley*, 354 U.S. at 444, 1 L. Ed. 2d at 1475, 77 S. Ct. at 1329.) In making this comparison the Court appears to have tacitly approved the conditional probation given in *Alberts*. In the instant case, paragraph one of the injunction does not differ from the conditional probation in *Alberts*. Consequently, under *Kingsley*, paragraph one of the injunction is appropriate.

We also note the Court's decision in *Vance v. Universal Amusement Co.* (1980), 445 U.S. 308, 63 L. Ed. 2d 413, 100 S. Ct. 1156. There, the Court affirmed a circuit court decision which held that two Texas nuisance statutes (Tex. Rev. Civ. Stat. Ann. arts. 4666, 4667(a)

(Vernon 1952 & Supp. 1978)) constituted prior restraints on the exercise of first amendment rights. In reaching its ruling the court stated:

"[T]he regulation of a communicative activity such as the exhibition of motion pictures must adhere to more narrowly drawn procedures than is necessary for the abatement of an ordinary nuisance, and (b) that the burden of supporting an injunction against a future exhibition is even heavier than the burden of justifying the imposition of a criminal sanction for a past communication." (445 U.S. at 315, 63 L. Ed. 2d at 420, 100 S. Ct. at 1161.)

The Court further noted:

"As the District Court and the Court of Appeals construed Art. 4667(a), when coupled with the Texas Rules of Civil Procedure, it authorizes prior restraints of indefinite duration on the exhibition of motion pictures that have not been finally adjudicated to be obscene. Presumably, an exhibitor would be required to obey such an order pending review of its merits and would be subject to contempt proceedings even if the film is ultimately found to be nonobscene. Such prior restraints would be more onerous and more objectionable than the threat of criminal sanctions after a film has been exhibited, since nonobscenity would be a defense to any criminal prosecution." 445 U.S. at 316, 63 L. Ed. 2d at 420-21, 100 S. Ct. at 1161-62.

The same concern that was voiced in *Vance*, being in contempt for distribution of nonobscene materials, does not present itself in the instant case. Paragraph one of the injunction in the instant case enjoins the sale or offering for sale of material described in section 11—20 of the Code (Ill. Rev. Stat. 1985, ch. 38, par. 11—20). Consequently, it only enjoins the sale or offer for sale of obscene material. Thus, under paragraph one of the injunction, defendants would not be subject to contempt for the sale of nonobscene material, and, in fact, the instructions in the present case required the jury to find that either of the two magazines was obscene. The concern expressed by the Court in *Vance* is therefore not present in the case now before us.

In accordance with the foregoing analysis, we find that constitutional guarantees of the first amendment do not require that the contempt finding be reversed in the instant case.

■ We note that we do not perceive conflict between this decision and this court's earlier decision reversing the injunction. The earlier decision finding section 37—1 *et seq.* of the Code unconstitutional and reversing the injunction was focusing on paragraph two of the injunction, as is evidenced by the court's reference to the order's one-year

period; the one-year period being mentioned only in paragraph two of the injunction. Paragraph two enjoins the use of the building for one year. Hence, if defendant had not posted bond, it would have been in violation of the injunction even for the sale of nonobscene material. Consequently, paragraph two was a prior restraint on free speech.

■■ Finally, we address the way in which we have severed the two portions of the injunction for purposes of the above analysis. The respect with which court orders must be accorded requires that the exception found in *Cooper* and *Providence Journal* be very narrowly applied such that if a portion of an injunction is constitutionally valid and it is that portion which is violated a contempt finding should stand. We are therefore of the opinion that the distinction that we draw between the two paragraphs is proper.

## II

Defendant next contends that the trial court committed reversible error when it permitted the State to elicit testimony that the two magazines at issue promoted the spread of AIDS. Defendant argues that such testimony was error because it was outside of the witness' expertise and because it was not probative. Defendant further argues that it was reversible error because of the fear which is generated by the mention of AIDS. In response, the State argues that the witness's reference to AIDS was not improper because (1) he was correct; (2) as a psychologist he could testify as an expert the material promotes the type of sexual behavior depicted which in turn increases the likelihood of the transmission of AIDS; and (3) the testimony concerning AIDS is relevant to the scientific value of the magazines. The State further argues that even if it were error to allow the testimony, such error is not grounds for reversal since such testimony did nothing more than vocalize a concern that would have been present in the minds of the jurors and that the reference was brief and isolated.

■■ Whether an expert is qualified to testify is within the sound discretion of the trial court, and its decision will not be overturned absent an abuse of discretion. (See *Hardware State Bank v. Cotner* (1973), 55 Ill. 2d 240, 250.) In the instant case, Dr. Chiappetta testified that he was a registered psychologist who had studied in the area of sexual psychology and human beings and had engaged in analysis of sexual behavior. With these credentials, we find that it was within Dr. Chiappetta's expertise to testify that the materials in question promote certain types of sexual behavior and that such behavior is conducive to the spread of AIDS. Therefore, we find that Dr. Chiappetta was not testifying outside his field of expertise. However, we

find that such testimony was irrelevant to the issue of obscenity.

■■ Determination of relevancy is largely within the discretion of the trial court, and the trial court's decision will not be reversed absent an abuse of discretion. (*Carlyle v. Jaskiewicz* (1984), 124 Ill. App. 3d 487, 496.) In the instant case, Dr. Chiappetta's statement that the materials promote AIDS was neither probative nor relevant to a determination of whether the materials were obscene. (See Ill. Rev. Stat. 1985, ch. 38, par. 11—20.) Therefore, we find that the trial court erred in allowing this testimony to stand.

Nevertheless, a reviewing court will not reverse a jury verdict because of error in admission of evidence where it is evident from the record that the outcome was not affected by the error. (*Greene v. Rogers* (1986), 147 Ill. App. 3d 1009, 1019.) After reviewing the record, we find that in the instant case, Dr. Chiappetta's statement that the materials at issue promoted AIDS would not have affected the outcome of the trial.

### III

■■ Defendant next contends that the trial court committed reversible error when it *sua sponte* orally instructed the jury. Defendant argues that the court's action deprived it of a fair trial because the instruction was incomplete and its effect was to create an absolute liability.

Illinois Pattern Jury Instructions, Criminal, No. 5.07 states:

> "A corporation is legally responsible for conduct which an agent of the corporation performs while acting within the scope of his office or employment and in behalf of the corporation.
>
> 'Agent' means any director, officer, servant, employee, or other person who is authorized to act in behalf of the corporation." Illinois Pattern Jury Instructions, Criminal, No. 5.07 (2d ed. 1981) (hereinafter IPI Criminal 2d No. 5.07).

In the instant case, the trial court during defense counsel's closing argument, stated "the corporation is responsible for the acts of his [*sic*] agent." Although this was error in that it was not a complete statement of IPI Criminal 2d No. 5.07, defendant fails to demonstrate how it was prejudicial. For example, defendant does not explain how a full instruction in accordance with IPI Criminal 2d No. 5.07 could have changed the outcome of the verdict. Consequently, we hold that the trial court did not commit reversible error in stating that a corporation is responsible for acts of its agents.

## IV

■■ Defendant's final contention is that the fine of $10,000 was excessive and an abuse of discretion. Defendant argues that the trial court was without authority to impose such a substantial fine.

Contrary to defendant's assertions, it has long been recognized that it is within the inherent power of the court to punish contempt. *In re G.B.* (1981), 88 Ill. 2d 36, 41.

Furthermore, section 1—3 of the Code provides:

> "No conduct constitutes an offense unless it is described as an offense in this Code or in another statute of this State. However, this provision does not affect the power of a court to punish for contempt or to employ any sanction authorized by law for the enforcement of an order or civil judgment." (Ill. Rev. Stat. 1985, ch. 38, par. 1—3.)

The fact that the same conduct was in violation of a criminal statute did not affect the power of the court to punish the conduct as contempt. See *People v. Rodriguez* (1980), 91 Ill. App. 3d 626, 630.

Finally, it does not appear that the amount of the fine was an abuse of discretion. The punishment to be imposed for contempt lies within the sound discretion of the court. *Hoga v. Clark* (1983), 113 Ill. App. 3d 1050, 1062.

In the instant case, the injunction was predicated upon a prior violation of section 11—20 of the Code. Violation of the injunction was therefore in effect a subsequent violation of section 11—20 of the Code. A second offense of obscenity is a Class 4 felony (Ill. Rev. Stat. 1985, ch. 38, par. 11—20(d)), which is punishable by a $10,000 fine (Ill. Rev. Stat. 1985, ch. 38, par. 1005—9—1(1)). Therefore, the contempt fine which was imposed was comparable to a fine under section 11—20 of the Code and as such was not an abuse of discretion.

For the foregoing reasons, the contempt finding and the $10,000 fine are affirmed.

Affirmed.

LINDBERG, P.J., and DUNN, J., concur.